## Mary R. Loomis and others v. Edmund A. Brush and others.

*Husband and wife: Deeds: Married woman's act.* An ordinary quit-claim deed from husband to wife, executed and delivered prior to the married woman's act, is of no more validity as an actual conveyance in equity than at law; and a deed absolutely void in law when made, is not validated as a conveyance by the subsequent laws enabling married women to take and enjoy property as if sole.

*Deed from husband to wife.* Such a deed on its face is not only legally void, but is presumptively voluntary.

*Equity jurisprudence: Husband and wife: Deeds.* While courts will, under peculiar circumstances, carry out a purpose which has failed by reason of the incapacity of the wife to accept a deed from her husband, the case must be plain and the equity manifest; and an equity, too, springing from a clear right arising out of matters independent of the deed.

*Registry: Void deed: Constructive notice: Equities.* Such a deed being void, its record would not be notice to any one of any possible equities between the parties to it; to make such a record constructive notice of

LOOMIS *v.* BRUSH.

such equities, would be to make the recording of a void instrument more extensive in its operation than that of a valid one, which is only notice of what its terms show.

*Bona fide purchasers.* Purchasers of land the record title of which is free from any indication of a valid outstanding claim in any one, who hold a good legal title, combined with the full equities of *bona fide* purchasers without notice, cannot be disturbed in their rights without superior equities; and there are no equities superior to those of such purchasers.

*Stale _claims: Equity jurisprudence.* Where pretended beneficiaries have slept upon their rights twenty or thirty years, and waited until it is fair to assume important primary evidence will be difficult of access, they have no claim upon the indulgence of courts of equity; it would be dangerous to imperil the stability of titles by listening to such stale claims.

*Submitted on briefs January 18.    Decided January 23.*

## Appeal in Chancery from Wayne Circuit.

*Jackson & Wisner,* and *M. E. Crofoot,* for complainants.

1. A conveyance of real estate by deed from a husband to his wife, though void at law, may be sustained and enforced in equity: *Shepard v. Shepard, 7 Johns. Ch., 57; Hunt v. Johnson, 44 N. Y., 27; Sims v. Ricketts, 35 Ind., 181, 192; Dunning v. Williams, 26 Conn., 226; Burdeno v. Amperse, 14 Mich., 96.*

2. The record of this deed was notice to defendants: *Laws 1833, p. 280; Perry on Trusts, 196, § 223.*

3. By the deed of July 3, 1837, Frazard became the trustee or legal owner of the land, and his wife became the *cestui que trust,* or equitable owner of the same: *Perry on Trusts, 21, § 38, and cases cited in note 4.*

4. From October, 1843, until August, 1856, Francis J. Frazard had a life estate in these lands, and was tenant thereof by the curtesy. " Trusts have been made the subjects of the common-law canons of descent; they are deemed capable of the same limitations as legal estates, and curtesy was let in by analogy to legal estate:" *4 Kent Com., 315; 2 Story Eq. Jur., § 974, and note 2; R. S. 1838, p. 265: Tong v. Marvin, 15 Mich., 69.*

5. Complainants are not barred by the statute of limitations: *Comp. L. 1857, p. 1403, § 3, sub. 2; Comp. L. 1871, p. 1976, § 9;* as to the statute of limitations, equity should follow the law: *52 Ill., 451; 7 Allen, 499; 48 Ga., 339; 32 Md., 151.* The right to bring these proceedings did not accrue to the heirs of Mrs. Frazard until August, 1856, and at the death of the tenant for life: *Comp. L. 1857, p. 1403, § 3, sub. 2.* " A *cestui que trust* will not be barred from his right to relief by any length of acquiescence, unless he have an immediate possessory title to the beneficial interest:" *Hill on Trustees, 392*

Loomis v. Brush.

-3; Perry on Trusts, 781-2, note 1. If Frazard had conveyed to his wife in her lifetime, the deed would have been void at law: 30 Mich., 328; and if a court of equity had compelled him to make the same conveyance during the life of his wife, the same would have been equally void.

6. Defendants took these lands with notice of the trusts, and charged therewith, and they are not entitled to the benefit of the statute of limitations: Perry on Trusts, p. 189, § 217, and cases cited in note 4, p. 762, § 828, p. 764, § 832, p. 768, § 840, note 5, p. 781, § 859, note 3; Ernest v. Croysdell, 2 D. G. F. & J., 175; Bridgman v. Gill, 24 Beav., 302; Upham v. Wyman, 7 Allen, 499. The case made by the bill does not show that defendants, or those under whom they claim, have denied the trust for more than twenty years, and held adversely; but, on the contrary, that they were not in a condition to deny the trust or hold adversely prior to the death of Francis J. Frazard in 1856. "No expectant estate can be defeated or barred by any alienation or other act of the owner of the intermediate or precedent estate," etc.: Comp. L. 1871, § 4009.

7. Did the trust estate created by the deed of July, 1837, become executed and vest the legal estate in the heirs of Mrs. Frazard when the statute of uses of 1846 took effect?—Ready v. Kearsley, 14 Mich., 228; LaGrange v. L'Amoreaux, 1 Barb. Ch., 18; if so, then complainants have a remedy at law; otherwise their relief is in equity. A trust to be executed by the statute of uses of 1846 must be not only a simple or naked trust but it must be an express trust, as contradistinguished from a trust "arising or resulting from implication of law:" Comp. L. 1871, ch. 148, § 6. We submit that the trust raised by the deed in question is of the latter class and therefore not within said statute. See Willard Eq. Jur., 419, 422; Johnson v. Fleet, 14 Wend., 182.

Cleveland Hunt, Geo. O. Robinson, Geo. H. Penniman and G. V. N. Lothrop, for defendants.

1. A conveyance from husband to wife, before the act of 1855, was void: Ransom v. Ransom, 30 Mich., 328.

2. Courts of equity act upon the analogy of the statutes of limitation, and will not entertain a suit for relief if it would be barred at law: Story Eq. Pl., § 503; and our statutes are held applicable equally to suits at law and in equity: Jenny v. Perkins, 17 Mich., 32; see also Bruce v. Tilson, 25 N. Y., 195; Stearns v. Page, 7 How., 819. If the time of the statute should not be applied from the death of Mrs. Frazard,

as we think it should, it must be applied from the time when the title was conveyed to Joseph, March 24, 1853.

But, aside from the bar of the statute, long delay, when such as to make a claim *stale*, will be sufficient to induce a court of equity to refuse relief.

This suit is upon a ground that is purely *equitable.* It is to vindicate a right which had no existence at law; on which no right or claim could be made at law; and of which, we think, at the time at which it is claimed to have arisen, very few persons in the state, of any class, had any conception whatever. Indeed, the suggestion that, under our laws, any such right could arise, would not readily have been received.

It is fundamental with a court of equity, that its suitors can have relief only when relief is equitable; only when they have a case that can be sustained *in foro conscientiæ.* If for a long time they have failed to assert their equities, and circumstances have so changed that, now to aid them, would work injustice, courts of equity will not aid them.

In this case it is clear that the complainants have no *legal* rights, and never had; their rights, if any, are only rights in conscience, which equity might uphold.

These rights arose, if at all, July 3, 1837; on the death of the mother in 1843 they passed to her children, all then of mature age. For over thirty years no action was brought to assert them, and now they have been picked up and animated by the dealer in doubtful titles. In the meantime Frazard has died; *bona fide* purchasers of the legal title have intervened, some of whom have died, and the property, formerly of little value, has, by improvements and the growth of the country, become very valuable.

Under such circumstances, and after so long delay, as the complainants have no legal right, a court of equity cannot sustain an equitable right. This is fully established in this state and by many decisions elsewhere. We only cite the following: *Campau v. Chene, 1 Mich., 400; Campau v. Van Dyke, 15 Mich., 379; McVickar v. Filer, 32 Mich., 304; Ritson v. Dodge, 33 Mich., 463; Platt v. Vattier, 9 Pet., 405; Bowman v. Wathen, 1 How., 189; Wagner v. Baird, 7 How., 234: Beaubien v. Beaubien, 23 How., 190; Badger v. Badger, 2 Wall., 95.*

In the case of *Badger v. Badger* the court said, that where the trust was stale, the bill should explain the delay, and show that there was good reason for it.

3. The only reason for any delay that is even hinted by the bill is, that Frazard had a life estate by the curtesy after the death of his wife. But to this we reply:

(*a*) If any such estate ever existed, it certainly expired at his death, August 31, 1856, more than eighteen years before suit brought.

(*b*) As early as February 12, 1849, when he conveyed by warranty deed the fee to his son Joseph, it was apparent that he was claiming to be absolute owner, and in defiance of the supposed trust. The *cestui que trust* could then have come into equity to establish their rights, and the supposed estate by the curtesy would have been no obstacle: *Willetts v. Mandlebaum, 28 Mich., 522.*

(*c*) But there never was any estate by the curtesy.

*First,* The matter of curtesy was then regulated by statute, and curtesy was given only on legal estates of inheritance —land of which she was "seized in her right of an estate of inheritance:" *R. S. 1838, p. 265, § 18:* see *Hathaway v. Lyon, 2 Mich., 93; Tong v. Marvin, 15 Mich., 60.*

*Second,* Even at common law there would have been no estate by the curtesy, for such an estate would have been inconsistent with the supposed trust. The trust set up is one which, in effect, is for the *sole and separate* use of the wife.

It is true that curtesy was allowed in trust estates of freehold of the wife: *Morgan v. Morgan, 5 Madd., 408; Cashburn v. Inglis, 3 P. Wm., 234; Davis v. Mason, 1 Pet., 503.* But where the trust was for the sole and separate use of the wife, no curtesy was allowed: *Hearle v. Greenbank, 1 Ves., 298; S. C., 3 Atk., 695–716; Cockran v. O'Hern, 4 W. & S., 95; 1 Washb. R. Pr., 130.*

4. A careful examination of the principal decisions on this subject will show that courts are guided by principles fatal to the case of complainants. It will be found, in all cases, that the relief is granted directly between the husband and wife, or their immediate representatives, and without any long delay.

The following are the principal cases which we have been able to find where a direct gift or grant was made by the husband to the wife, and which, being void at law, has been set up as the basis of a trust in equity: *Lucas v. Lucas, 1 Atk., 270; Beard v. Beard, 3 Atk., 72; Moyse v. Gyles, 2 Vern., 385; Walter v. Hodge, 2 Swanst. Ch., 92; Slanning v. Style, 3 P. Wm., 334; Stoit v. Ayliffe, Rep. in Ch., 60; Shepard v. Shepard, 7 Johns. Ch., 57; Garlick v. Strong, 3 Paige, 440; Neufville v. Thompson, 3 Edw. Ch., 92: Wallingford v. Allen, 10 Pet., 588; Jones v. Obenchain, 10 Grat., 259; Hunt v. Johnson, 44 N. Y., 27.*

It is undoubtedly held that where the transaction is in

itself meritorious, and the act is one which clearly separates the property and devotes it to the separate use of the wife, equity will uphold it to carry out the intent of the parties, provided no rights of creditors, subsequent purchasers, or children intervene, and also provided that no other circumstances intervene to affect the original equities.

There was no consideration for the deed here involved, beyond that of love and affection, and the meritorious one of making a reasonable provision for the wife. The money of the wife belonged to her husband when they took up their residence here, and as soon as he got possession of it, it became his absolutely.

5. The deed of Frazard to his wife was not within the recording acts, and its record was not constructive notice to any one. The deed was in law a nullity. It is only legal conveyances which are authorized to be recorded. The registry laws are a system for the record of instruments executed with prescribed forms, and affecting the legal title to lands. They do not at all contemplate mere equities. And an instrument which could have no legal operation as a deed of land has no more right to registry than a bill of sale of chattels, though executed with all the formalities which a deed would have. No legal effect can be given to an instrument which is a legal nullity: *Grimstone v. Carter, 3 Paige, 437; Walker v. Gilbert, 1 Freeman Ch., 25; Halsted v. Bank of Ky., 4 J. J. Marsh., 558.*

And the principle that the record of an unauthorized instrument is no notice, has often been recognized in our courts: *Wing v. McDowell, Walk. Ch., 182; Dutton v. Ives, 5 Mich., 515; Galpin v. Abbott, 6 Mich., 17; F. & M. Bank v. Bronson, 14 Mich., 361; Buell v. Irwin, 24 Mich., 145.*

CAMPBELL, J:

Complainants file this bill as heirs, and grantees of heirs, of Maria Theresa Frazard, against several defendants who are purchasers, without actual notice, under title derived from her husband.

The bill sets up a purchase by the husband, Francis Joseph Frazard, in 1833, of a farm in Grosse Pointe, Wayne county, the purchase money whereof is alleged to have been paid by the wife out of her own money, brought over from France, where they had formerly resided. The land was

taken in the husband's name, and it is not charged to have been done fraudulently or improperly, and the family lived on the land until the death of Mrs. Frazard, in 1843.

It is alleged that Mrs. Frazard afterwards insisted that as the purchase money had been paid out of her funds, she ought to have a part of the land secured to her, and that on the third day of July, 1837, her husband made an ordinary quit-claim deed to her of the southwest half of the premises, which was recorded in the county registry, July 17th, 1837.

Mrs. Frazard died in 1843. Mrs. Loomis, the complainant, is her daughter, and the other complainants are her grandchildren. In 1869, all the other heirs, except certain children of Sophia Frazard (who was a daughter of Mrs. Frazard and died in 1851), conveyed their rights to the husband of Mrs. Loomis, and he conveyed the same to his wife.

The defendants all claim under a warranty deed made by Francis Joseph Frazard to his son Joseph Frazard, February 12th, 1849, and recorded the next day.

The bill, admitting and averring the legal invalidity of the conveyance, claims that it be held valid as creating a trust to Mrs. Frazard's separate use, descending to her heirs. No notice is set up to any one of the defendants except through the record of the deed.

It is very well settled that such an instrument is of no more validity as an actual conveyance in equity than at law, and that in order to work out an equity, there must be a clear right arising out of matters independent of the deed, as well as some further conveyance or release compelled, to carry it into effect as an agreement or obligation. If the deed was made under circumstances which would have rendered it proper for equity to compel the husband to carry out a trust in his wife's favor, the only way under the old system would have been to require a sufficient conveyance to trustees if the wife was living, or to the beneficiaries if she was dead. There can be no ground for claiming that

a deed absolutely void in law when made is validated as a conveyance by the subsequent laws which enable married women to take and ' enjoy property as if sole. And there can be no pretense that the deed could stand alone either at law or in equity, without an inquiry into the circumstances, to enable the court to determine whether any equity arose concerning it. There are no presumptions in its favor. On its face it is not only legally void, but presumptively voluntary, and contains nothing to indicate that it was given for any meritorious purpose. While courts will, under peculiar circumstances, carry out a purpose which has failed by reason of the incapacity of the wife to accept a deed from her husband, the case must be plain and the equity manifest.—*Shepard v. Shepard, 7 J. C. R., 57.* Even under our laws for the protection of the separate estates of married women, conveyances from husband to wife were never valid until the act of 1855.—*Ransom v. Ransom, 30 Mich., 328.*

The deed being void, its record was no notice to any one of any possible equities between husband and wife. If such equities existed, they did not grow out of the deed, and were not embodied in it. To allow the record to be constructive notice in such a case, would be to make the recording of a void instrument more extensive in its operation than that of a valid one, which is only notice of what its terms show.

The purchasers found the record free from any indication of a transfer which bound any one, and they unquestionably hold a good legal title, combined with the full equities of *bona fide* purchasers without notice. Such rights cannot be disturbed without superior equities, and there are no equities superior to those of such purchasers.

It is unnecessary to consider the questions arising under the statute of limitations, as the title is not maintainable under any circumstances against these purchasers. But apart from any statutory defense, if applicable, the bill was not filed until thirty-three years after Mrs. Frazard's death,

and twenty-five years after the conveyance to Joseph Fraz-ard, and about twenty years after his father's death. No reason is given for the delay, and where pretended beneficia-ries sleep so long upon their rights, and wait until it is fair to assume important primary evidence will be difficult of access, they have no claims upon the indulgence of courts of equity. It would be dangerous to imperil the stability of titles by listening to such stale claims, which must be presumed unfounded when not urged within some reasona-ble time.

The demurrers were well taken, and the bill was properly dismissed.

The decree must be affirmed, with costs.

The other Justices concurred.