PETER F. DEVEAUX v. CHARLES FOSBENDER.

*Deeds—Priority of record—Bona fide purchasers.*

How. Stat. § 5683 makes an unrecorded deed void as against a subsequent deed taken in good faith and recorded. Whether it would be so where the subsequent deed was a mere quitclaim of such interest as remained in the grantor, and followed sundry mesne conveyances to persons who were affected by notice of the first grantee's equities —Q. A judgment in ejectment to the contrary was left undisturbed by a divided Court.

Error to St. Clair. (Stevens, J.) May 6.—Sept. 29.

EJECTMENT. Defendant brings error. Affirmed.

*Chadwick & Cline* for appellant.

*Oliver Prescott* for appellee.

COOLEY, C. J. This is an action of ejectment, instituted to recover possession of a parcel of farming land in the county of St. Clair. Both parties claim title, and both deduce their claim from John K. Hatheway, to whom it is conceded the title was conveyed by Josephine L. Calzin, on November 11, 1868.

To make good his claim the plaintiff produced the following proofs :

1. A general power of attorney from John K. Hatheway and wife to Gilbert Hatheway, bearing date November 15, 1858, duly executed, acknowledged, and recorded. This instrument is not given in the record, but it was assumed on the argument to have been sufficient to empower the attorney to convey land, and from its being said to be general it is inferred that it did not describe particular parcels of land, but only referred to them in some general way.

2. A warranty deed from John K. Hatheway and wife, by Gilbert Hatheway, their attorney, to Oliver Suey, dated December 16, 1868, and recorded June 15, 1883.

3. A quitclaim deed from Oliver Suey and wife to the plaintiff, dated June 12, 1883, and recorded June 15, 1883.

4. Evidence by Suey and others that soon after the date of the deed to him he went into the possession of the land, cultivated and improved a part of it, and remained in possession until 1878, then left his son in possession for two years, after which he put in one Addy as tenant; also that the taxes were paid by Suey from the time he bought up to and including the year 1881; also that when Suey bought he gave back to John K. Hatheway a mortgage for $719.77, in which it was recited that it was given "as part payment of the purchase price of said land," which mortgage was recorded December 22, 1868.

5. By way of meeting the defense, plaintiff also gave evidence that in 1881 an agent of James S. P. Hatheway called on Addy, claiming the land for his principal, and demanding that Addy surrender possession or pay rent, and Addy then agreed to pay rent to him. Suey was informed of this transaction when he called for his rent in 1882. Plaintiff also testified that he had lived near the land and knew what Suey had done in clearing, and that Suey had occupied in person or by tenant up to 1881.

Defendant's evidence to show title in himself was as follows:

1. The following deed, which was duly witnessed and acknowledged, and recorded August 2, 1872:

"This indenture, made the twenty-sixth day of February, in the year of our Lord one thousand eight hundred and seventy-two, between John K. Hathaway and his wife, Mary C. Hathaway, of Plymouth county, in the State of Massachusetts, of the first part, and James S. P. Hathaway, of the county of Macomb, in the State of Michigan, of the second part, witnesseth: That the said parties of the first part, for and in consideration of the sum of five hundred dollars to them in hand paid by the said parties of the second part, the receipt whereof is hereby confessed and acknowledged, do, by these presents, grant, bargain, sell, remise, release, and forever quitclaim unto the said parties of the second part, and to his heirs and assigns, forever, all of our and each of our rights, titles, and interests in and to all real estate and per-

sonal estate and property, of whatever name or nature, situate in the counties of Macomb and St. Clair, in the State of Michigan, or elsewhere in the United States, which has in any way arisen or grown out of the stave business (so-called transactions) as conducted by Gilbert Hathaway, as attorney in fact for the said John K. Hathaway, including all notes, mortgages, and accounts, dues, demands, choses in action, and all evidences of indebtedness whatever that may arise or grow out of any and all bargains, transactions, and dealings of Gilbert Hathaway, as attorney in fact for John K. Hathaway, in conducting all the aforesaid referred to so-called stave business in all and every part of the United States of America; and also the said John K. Hathaway and Mary C. Hathaway hereby convey and deed unto the said James S. P. Hathaway all other real and personal estate and property, of whatsoever name or nature, that they, or either of them, have any right, title, and interest in and to, situate in the aforesaid Macomb and St. Clair counties, or elsewhere in the State of Michigan, together with all and singular the hereditaments and appurtenances thereto belonging, or in anywise appertaining; to have and to hold the said above-described property to the said party of the second part, and to his heirs and assigns, to the sole and only proper use, benefit, and behoof of the said party of the second part, his heirs and assigns, forever.

In witness thereof, the said parties of the first part have hereunto set their hands and seals the day and year first above written.

JOHN K. HATHAWAY.    [L. S.]
MARY C. HATHAWAY.    [L. S.]"

2. A warranty deed of the land now in controversy from James S. P. Hatheway and wife to Horace F. Leonard, dated June 29, 1879, and recorded July 1, 1879.

3. A deed from Horace F. Leonard and wife to the defendant, dated January 11, 1882, and recorded January 18, 1882.

4. Evidence by the defendant himself that when he bought he paid in cash thirteen hundred dollars for the land, which was its full value; that he bought without any knowlege of claim to the land by Suey, or by any one else, adverse to the James S. P. Hatheway title; and that when he made his

purchase the land was occupied by a man who rented of James S. P. Hatheway.

A cursory examination of the evidence thus produced by the parties respectively will make it apparent that the plaintiff had a perfect chain of title upon which he was entitled to recover, unless by force of the recording laws it was lost to him by reason of the deed from John K. Hatheway to Suey not being recorded until after the deeds to James S. P. Hatheway to Leonard and the defendant had been made and recorded. The circuit judge was of opinion that it was not so lost, and directed a verdict for the plaintiff. The correctness of this ruling is the question now to be decided.

The deed to James S. P. Hatheway was supposed to be inoperative to convey the land in question for three reasons: (1) By its terms it was restricted to such interests as the grantor then possessed, and therefore could not apply to any which had been previously conveyed. (2) The land in controversy was at the time occupied by Suey under his deed, and his occupation was good notice of his title. (3) The deed to James S. P. Hatheway conveyed to him the Suey mortgage, which by its terms apprised him, and would apprise a purchaser from him, that Suey had a deed of the land.

This third reason lacks facts to support it. It was not shown that James S. P. Hatheway received the Suey mortgage, and some other disposition may have been made of it. But constructive notice to him of the mortgage and of its contents would not be notice to one who should purchase from him. Leonard, if he had no actual knowledge of the Suey mortgage, would not be constructively charged with notice by the fact of its being recorded, for he did not claim through Suey, and if he went to the records before purchasing, he would be under no obligation to search for mortgages by Suey, or for mortgages to either of the Hatheways. He would begin his examination of the records with John K. Hatheway as owner, and look for deeds and other conveyances by him; not to him. Those to him would presumptively not concern a purchaser at all; and if the registry law

were to hold him chargeable with constructive notice of their contents, it would be a dangerous trap to purchasers, and worse than useless. But it does not so hold him chargeable. The Suey mortgage and its recital may, therefore, be dismissed from further attention.

The fact that Suey was in possession, claiming title, at the date of the deed to James S. P. Hatheway, would be conclusive as against him: *Rood v. Chapin* Walker's Ch. 79; *McKee v. Wilcox* 11 Mich. 358; *Woodward v. Clark* 15 Mich. 104; *Dunks v. Fuller* 32 Mich. 242; *Hommel v. Devinney* 39 Mich. 522. But possession at that time would be of no force as against a purchaser from James S. P. Hatheway, who should take his own conveyance at a time when the land was unoccupied, or when it was held under his grantor. And the defendant on this branch of the case made a prima facie showing that must have entitled him to a verdict if the case had turned upon it.

The other objection to the James S. P. Hatheway title presents a more difficult question. The deed to him purports to convey all the "rights, titles, and interests" of the grantors " in and to all real estate and personal estate and property, of whatever name and nature, situate in the counties of Macomb and St. Clair, in the State of Michigan or elsewhere in the United States," and that have arisen or grown out of a certain stave business, including mortgages, etc., and also " all other real and personal estate and property, of whatsoever name or nature," that the grantors or either of them had " any right, title, or interest in and to, situate in the aforesaid counties," etc. The attention is challenged here to the fact that the deed nowhere asserts for the grantors an ownership of any described lands, or assumes to convey definite parcels, but it is seen that it is general in its terms, and assumes to convey such right, title and interest in such real and personal estate as the grantors then had. And apparently they did not then have the land in controversy.

In *Eaton v. Trowbridge* 38 Mich. 454, 460, a deed was under consideration whereby the grantor conveyed " all the

right, title and interest of and now remaining in the party of the first part of, in and to all that piece or parcel of land. * * * known as the 'Mullett Farm.'" The following is an extract from the opinion of the Court in that case: "Where a deed describes land by metes and bounds or otherwise, and purports to convey it, the grantee, if a purchaser for value without actual or constructive notice of previous conveyances, is entitled to claim what is described; but when one receives a conveyance of a 'remaining.' interest, the description itself limits the operative words to the interest remaining unconveyed. The grantee purchases nothing further, and the grantor assumes to convey nothing more. The deed, under the recording laws, defeats no prior unrecorded conveyance, because it is not a second conveyance of anything previously conveyed. Both deeds may and do well stand together."

This language is applicable to the deed to James S. P. Hatheway, and would have precluded his taking under it, by force of the recording laws, any lands which his grantors had previously conveyed to others.

But the case is not determined when it is found that James S. P. Hatheway could not hold this land; his grantee may, perhaps, hold it notwithstanding. It is the general fact that when a party is entitled to the protection of the recording laws, he claims and holds a title which his grantor could not hold, and which his grantor in fact, did not own. The state gives him the title by virtue of its general sovereignty, and under a general law intended for the protection of parties who in good faith have relied upon the public records. *Loomis v. Brush* 36 Mich. 40. Somebody is usually a sufferer in such a case, but it is only the party who has been negligent, and whose negligence would otherwise bring loss upon the diligent.

Let us see, then, how, upon the facts, the case stands with this defendant. His deed from Leonard bears date January 11, 1882. Supposing him to have gone on that day to the records for examination, what would he have found? *First,* he would have found a deed of warranty of the land from

James S. P. Hatheway to Leonard, bearing date some two years and a half before that time. *Next*, he would have found the general deed from John K. Hatheway to James S. P. Hatheway. Looking to see if John K. Hatheway, previous to the deed to James, had made conveyance of this parcel, he would have discovered no such conveyance. The report of the record to him would therefore have been that Leonard owned the land. And this report would be true. The plaintiff had a right to act upon it by completing his purchase, paying his money, and taking and recording his deed. His case is within the language as well as the intent of the registry laws; and Suey, by retaining his deed from the record, has subjected himself to the loss which the registry law intends to inflict when the protection of subsequent good-faith purchasers requires it.

Allusion has been made to the fact that the power of attorney, through an exercise of which the plaintiff claims, was general. Suppose John K. Hatheway, instead of deeding to James S. P. Hatheway, had given him a power of attorney authorizing him to convey interests, making use therein of the same general terms which are made use of in the deed. What doubt can there be that a deed, under the power, made of a parcel not appearing of record to have been previously conveyed, would have been a good deed; or that the purchaser under it, who caused his deed to be promptly recorded, would be entitled to hold the parcel as against the holder of a previous unrecorded conveyance of whose existence he was ignorant when he received his own? These questions cannot be answered adversely to the claim of such second grantee without depriving of the benefit of the registry laws one whose claim to rely upon what is shown by the public records is as good in right and reason as that of any other. It is also as good on the words of the statute. The statute, in terms, applies wherever there is a "subsequent purchaser in good faith and for a valuable consideration of the same real estate, or any part thereof, whose conveyance shall be first duly recorded." How. Stat. § 5683. And if the subsequent conveyance is sufficient to pass the

title, if there had been no other, it is sufficient to have effect as against the prior conveyance, if the statutory conditions as to recording exist.

In the case before us there is no question that the deed to the defendant would have passed to him the title, were it not for the earlier deed to Suey. But the evidence showed that defendant was a purchaser in good faith and for a valuable consideration, and his deed was duly recorded before that of Suey. The jury should therefore have been directed to return a verdict in his favor.

A new trial should be awarded.

SHERWOOD, J. concurred.

CAMPBELL, J. In this action of ejectment both parties claim as grantees of the title of John K. Hatheway, and the question is, which has the best title? Plaintiff bought from one Suey, who obtained a conveyance under a valid general power of attorney from said Hatheway to Gilbert Hatheway, executed, acknowledged and recorded in 1858. This conveyance, made in 1868, and in due form, and for a complete and valuable consideration, was left for recording with Gilbert Hatheway, and money given him to pay for the record, but by some omission it was not recorded, and was returned to Suey, who failed to notice the defect. Suey went at once into possession and remained there personally until 1878, when he left it in charge of a tenant. He gave back a purchase-money mortgage, which was duly recorded. He also paid taxes up to and including 1881, and the land was regularly assessed to him.

In February, 1872, while Suey was in possession, John K. Hatheway and wife made a quitclaim deed of property in Michigan to James S. P. Hatheway, which covered by express words all lands and other property arising out of certain stave business which had been carried on for the grantor by Gilbert Hatheway as his attorney in fact. This instrument contained a residuary clause, conveying further, "all other real and personal estate and property, of whatsoever name

or nature, that they or either of them have any right, title, or interest in and to, situate in the aforesaid Macomb and St. Clair counties, or elsewhere in the State of Michigan."

On June 28, 1879, while Suey was in possession, James S. P. Hatheway gave a warranty deed of the land now in controversy to Horace F. Leonard. There is nothing in the record to show that Leonard was a purchaser for value, and he could not be a bona fide purchaser as the possession then stood. It does not appear that he undertook to assert any such claim. Some time in 1881 Hatheway managed, by intimidation, to obtain an attornment to himself from Suey's tenant. At this time the title had passed from him on the record to Leonard, and there is nothing to show that he retained any interest whatever. About the end of 1881, but at what precise time does not appear, defendant, who had occupied an adjoining farm for many years, negotiated with Hatheway for this property. He was informed expressly by the register of deeds that Hatheway had conveyed to Leonard, and he so informed Hatheway, who told him substantially that it did not concern him who owned it, as he would have it deeded to him. A deed from Leonard, which was a quitclaim, with covenant against his own acts, was given in January, 1882, to defendant, who had no dealings with any one but Hatheway, and defendant paid a valuable consideration for the land. The deed from John K. Hatheway to Suey was subsequently recorded, and Suey conveyed to plaintiff. Hatheway put defendant in possession when he purchased.

There is no question but that plaintiff has the earliest title in fact, derived from John K. Hatheway, and defendant can only be preferred to it by making himself out to be a bona fide purchaser without notice and for a valuable consideration, whose deed was first recorded.

It is not pretended that James S. P. Hatheway or Leonard can be treated as bona fide purchasers. Their claims were unquestionably subject to plaintiff's priorities. Defendant's equities began with himself, and can only be made out by holding that James S. P. Hatheway obtained a convey-

ance which in law would take precedence of a prior unrecorded deed, if taken in good faith for value, and by holding further that defendant had nothing to put him on inquiry when he purchased.

It appears from his own showing that defendant did not deal with Leonard personally, but did deal with a person who had no title. It is not very clear that under such circumstances he could get by the quitclaim deed from Leonard any better title than Leonard had. He made no inquiries from Leonard, and the information he got from Hatheway gave him no light whatever on the real title. Leonard had no actual title as against plaintiff, neither did Hatheway. The deed from Leonard asserted none.

So far as the deed to James S. P. Hathéway is concerned, it has been held in several cases cited on the argument, that it does not convey any more title than the grantor had ; and if this is so, it cannot be held that the record can import any more than the deed itself. Neither can the record be any more available to subsequent than to early purchasers. No land is described in the portion of the deed under which this claim is set up. The deed might as well have quitclaimed the whole State, as in legal effect it does. If it conveys no title not actually owned or asserted, then it cannot be very important whether the holder of the prior title has his deed recorded or not. It is enough that he owns the land.

In my opinion the judgment below was correct and should be affirmed.

CHAMPLIN, J. concurred.