KEISTER *v.* GEMUEND.

1. Taxation—Equalization—Home-Rule City Ward as Assessment District.

A home-rule city's ward, being the assessment district under the charter, is the unit for equalization of assessment for taxes by the county board of supervisors.

---

References for Points in Headnotes
[2, 3, 7]  51 Am Jur, Taxation § 749 *et seq.*
[4]  51 Am Jur, Taxation § 742.
[6]  51 Am Jur, Taxation § 150 *et seq.*

2. Same—Home-Rule City Charter—Board of Review and Equalization—Ejusdem Generis.

The operative effect of the clause "and generally shall perfect said roll in any respect by said board deemed necessary and proper" appended to section of home-rule city charter, establishing a city board of review and equalization of city assessment rolls and specifically conferring power upon it to examine, correct errors or deficiencies as to names, valuation or description, reduce or increase valuation of any property and add wrongfully omitted property to or strike wrongfully included property from the rolls, did not enlarge the powers specifically conferred and authorize the city board to equalize total valuation as between the wards, the doctrine of *ejusdem generis* being applied (Ionia City Charter, ch 18, § 1).

3. Same—City Board of Review—Powers as to Individual Assessment Rolls—Equalization.

The power to equalize valuations as between the several assessment districts of a city is not granted by a conferral of power to a city board of review and equalization to examine individual assessment roll, make corrections thereon, add names, valuations and descriptions wrongfully omitted and to strike from the roll descriptions wrongfully thereon (Ionia City Charter, ch 18, § 1).

4. Same—Equalization.

The power to equalize total valuations as between assessment districts must be specifically conferred upon a governmental agency and may not be implied.

5. Same—Equalization—Board of Supervisors.

The equalization provisions of the general property tax law recognize the ward as an assessment district by empowering the county board of supervisors to examine the assessment rolls of the several townships, wards or cities (CLS 1954, § 211.34).

6. Same—Uniform Rates

Taxation upon property must be at a uniform rate except property paying specific taxes (Const 1908, art 10, § 3).

7. Same—Equalization.

The power to equalize taxes may not be conferred upon a board merely by including the term "equalization" in the name of the board.

8. Costs—Public Question—Equalization of Tax Assessments.

No costs are allowed in mandamus and prohibition proceeding

to determine whether a home-rule city board of review and equalization or county board of supervisors had the power to equalize total valuations as between wards of the city, a public question being involved.

Original petition for writs of mandamus and prohibition by Fred D. Keister, Jr., individually and as supervisor of second ward of the City of Ionia, and 3 other taxpayers, against Gertrude B. Gemuend, clerk-treasurer of the City of Ionia, the City of Ionia, a municipal corporation, the school district of the city, and the County Board of Supervisors of Ionia County, to enforce collection of taxes on roll submitted as substitute for taxes spread on basis of equalization by supervisors and to prohibit future equalization between wards of the city by county supervisors. Submitted January 15, 1957. (Calendar No. 47,014.) Writs denied June 10, 1957.

*Amberg, Law & Fallon (Niel A. Weathers, of counsel), for plaintiffs.*

*Douglas R. Welch, for defendants Gemuend and City of Ionia.*

*C. Ronald Van Buren, Prosecuting Attorney, for Ionia County Board of Supervisors.*

VOELKER, J. This is an original proceeding in this Court by which the plaintiffs and petitioners seek a writ of mandamus against the defendant Gemuend and a writ of prohibition against the defendant county board of supervisors, both of which have answered in opposition. No direct relief is sought against the remaining 2 defendants, who are joined because of their interest in the proceedings. The city of Ionia joined with the defendant Gemuend in answering in opposition to the petition. The action purports to be a class action in which the plaintiff

Keister (as supervisor of the second ward of the city of Ionia and, also, as an individual resident and taxpayer thereof) and 3 other residents and taxpayers in said ward seek the relief prayed on behalf of themselves and all other taxpayers of the ward.

It was stipulated between the plaintiffs and the contesting defendants that this Court might determine all issues of law and fact from the petition, the various answers, the exhibits respectively attached thereto, the rather voluminous record, and the further facts agreed to in the stipulation itself, without the necessity of a reference. From the foregoing, the facts necessary to a determination of this controversy appear to be as follows:

The city of Ionia, a home-rule city, operates under a charter adopted in 1924. This charter divides the city into 4 wards and provides for the election of a supervisor from each ward. The making of an assessment roll for his ward is one of the primary duties of the supervisor elected from each ward. Each supervisor is required to submit his assessment roll to what the charter designates as a board of review and equalization, which is composed of 6 members, namely, the mayor, the 4 supervisors and the combined clerk-treasurer.

Late in 1955 the State tax commission made a tax study in the city which disclosed marked inequality in the assessed valuations of the various wards. This study was made available to the defendant board and was used by it as the basis for the complained-of equalization of the city of Ionia for the year 1956. The net result of this subsequent equalization was not only to increase the total valuation in the city but to sharply increase the ratio of taxes in the second ward over the other 3 wards.

This Mr. Keister did not like. In the spreading of the so-called July or summer tax rolls for the city for the year 1956 a dispute arose between the plain-

tiff Keister and certain city and county officials as to whether or not the equalization made by the defendant board should be followed. Plaintiff Keister warmly contended that the tax rates spread in the city should be uniform on the basis of assessed valuation while the other officials with equal heat contended that the tax rate spread in the city of Ionia in the summer of 1956 should be uniform on the basis of the county equalization.

On July 9, 1956, the plaintiff Keister delivered a tax roll to the defendant clerk-treasurer prepared on the basis of the equalization made by the defendant board, the warrant of which he refused to sign. Taxes were billed to city taxpayers (including those in the second ward) on the basis of this tax roll. Some second ward taxpayers have paid, others have paid under protest, and still others have not paid at all. On August 6, 1956, plaintiff Keister filed still another tax roll with the defendant clerk-treasurer in which the summer taxes for the city were spread in the second ward without regard for the county equalization. At this time he demanded that the defendant clerk-treasurer collect summer taxes in his ward on the basis of this second tax roll, which demand was ignored.

The main controversy presented by these proceedings is whether the general property taxes levied within the city of Ionia must be spread in proportion to the ward valuations fixed by the city board of review and equalization without regard for the equalization of the Ionia county board of supervisors. A necessary companion question is whether the county board of supervisors has sole jurisdiction to equalize the wards of the city of Ionia. This in turn necessitates some comparison between and interpretation of certain provisions of the general tax law and the charter of Ionia.

The general tax law (CL 1948, § 211.107 [Stat Ann § 7.161] ) provides, in part, as follows:

"This act shall be applicable to all cities and villages where not inconsistent with their respective charters. With such exceptions, the provisions herein as to supervisors, township treasurers, and boards of review, shall include all assessing and collecting officers, and all boards whose duty it is to review any assessment rolls."

The following are pertinent excerpts from the provisions of chapter 18 of the Ionia city charter, which we quote along with the emphasis supplied by the plaintiffs, and which, they here urge, give the city board and not the county board the exclusive right to equalize taxes between the various city wards:

"Sec. 1. The mayor, 4 supervisors and clerk-treasurer shall constitute a *board of review and equalization* of the assessment rolls of the city, a majority of whom shall constitute a quorum for the transaction of business. They shall have power and it shall be their duty, to examine said assessment rolls, with full power to correct any errors or deficiencies found therein, either as to names, valuation or description; and of their own motion, or on cause shown, may reduce or increase the valuation of any property; and shall add to the said assessment roll any property in said city that may have been omitted and value the same, and may strike from said roll any property wrongfully thereon, *and generally shall perfect said roll in any respect by said board deemed necessary and proper,* for which services the members of the board, shall each receive $4 per day while actually employed, which shall not be longer than 4 days in 1 year. * * *

"Sec. 3. Any member of said board shall have the power to administer oath, and they may examine on oath any person or corporation touching the matter of his, her or its assessment. They shall keep a record of their proceedings, and all changes made in

said roll, *and the amount added to or deducted therefrom.* The total valuation shall be entered upon a record which shall be deposited with the clerk-treasurer, who shall be clerk of said board. A majority of said board shall decide all questions. The rolls as prepared by the supervisors and reviewed and *equalized* by the board shall stand as the rolls for the purpose of assessment of the several taxes as in this charter provided, and as may be required by the laws of the State of Michigan.

"Sec. 4. After the said rolls have been completed, reviewed and *equalized* as aforesaid, the clerk-treasurer shall indorse and sign a statement upon the rolls to the effect that the same are the general assessment rolls for the city of Ionia, for the year in which they have been prepared as approved by the board of review and equalization. Any words showing such act to have been performed by said board shall be deemed sufficient if signed by the clerk-treasurer and dated.

"Sec. 5. Said roll shall then be returned to the supervisors, and shall be conclusively presumed by all courts and tribunals to be valid, and shall not be set aside except for causes mentioned in the general laws of the State relating to the assessment of property and the levy and collection of taxes thereon.

"Sec. 6. After the confirmation of said rolls by the board of review and equalization, and on or before the first day of July in each year the city supervisors shall spread the several taxes to be raised in said city, *according and in proportion to the equalized valuation entered by the board of review and equalization in the assessment rolls of the city.*"

We also note that section 10 of the same chapter of the city charter provides as follows:

"All provisions of the general tax law in relation to the making of the assessment rolls and the levying, collecting and paying of said taxes are hereby adopted so far as the same are applicable."

And section 14:

"On the first day of November or as soon thereafter as possible, and before the first day of December, the city supervisors shall apportion and spread upon the tax roll or rolls of the city, all State and county taxes certified to them by the board of supervisors or otherwise, such school taxes and other taxes as are authorized by law and required to be spread upon such roll or rolls."

Section 17 finally provides, in part, as follows:

"And said general law shall govern in all things relating to the levy and collection of taxes not herein otherwise expressly provided for."

It is one of the main contentions of the plaintiffs that the above-quoted and emphasized provisions of the Ionia city charter coupled with the first sentence of the above-quoted provision from the general tax law show an inconsistency between the two which thereby clearly gives the city board and not the county board exclusive jurisdiction in matters of tax equalization in the city of Ionia. They also contend that what is called in the charter the board of review and equalization in effect exercises 2 functions: (1) the review of assessments and (2) an equalizing function between the several wards of the city as assessment districts. In making this claim they rely heavily on the fact that the word "equalization" appears in the title of the board and that the words "equalize" or "equalization" appear in various of the charter sections above quoted. They further contend that the power of equalization is further impliedly granted the city board by the words near the end of section 1, above quoted, which read: "and generally shall perfect said roll in any respect by said board deemed necessary and proper."

Plaintiffs cite a number of cases to sustain their contention, and especially do they depend on *Cham-*

*berlain* v. *City of St. Ignace,* 92 Mich 332. We think that that case is distinguishable from ours in that there chapter 24, § 6, of the charter (see Local Acts 1883, No 223) specifically gave the local board of review power to equalize between the wards. The same is true in *City of Grand Rapids* v. *Welleman,* 85 Mich 234, cited by plaintiffs. The charter provision there is quoted on page 241 of the opinion in language almost identical with that granting equalization powers to county boards of supervisors.

The case of *Auditor General* v. *Griffin,* 140 Mich 427, relied on by plaintiffs, goes off largely on the point that the municipality itself was there construed under the charter provisions involved as the assessment district to be treated as a unit. Nor are the other cases cited by the plaintiffs, in our opinion, either helpful or controlling. The main question in *Messenger* v. *Peter,* 129 Mich 93, revolved around whether the ward or the municipality was the assessing district for the purpose of equalization by the county board of supervisors, this Court finding the former to be. We likewise find in the instant case that the ward is the assessment district and the 2 cases, above cited, appear clearly to hold that the assessment district (whether city or ward) is the unit for equalization by the county board.

Plaintiffs also contend that the words "and generally shall perfect said roll in any respect by said board deemed necessary and proper" in section 1 of the city charter by implication confer upon the city board the power to equalize total valuation as between the wards. We do not subscribe to this view because we think it is plain that under the doctrine of *"ejusdem generis"* the operative effect of the above-quoted words should be limited and confined to the powers and duties specifically enumerated immediately preceding said phrase. In any case these magic words are still a rather far cry from expressly

conferring powers of equalization on the city board. We further note that when the Ionia charter was adopted the general tax law granted a similar broad authority for boards of review to correct assessments "in such manner as in their judgment will make the valuation thereof just and equal." (CL 1948, § 211.30 [Stat Ann § 7.30].) Yet nobody seriously claims that these words in the general law conferred powers of equalization upon local boards of review. To our mind it is rather plain that the "equalizing" which the city board may perform under the charter of Ionia relates to properties on the same ward tax roll and not to total valuation as between the wards.

We find from the record here that the Ionia city board in 1956 reviewed the assessment roll of each ward. It made changes in the valuation of specific descriptions. It executed the usual certificate on the roll of each ward in which it recited the total valuation in each ward. It did nothing more than is usually required of township boards of review nor in our opinion did it do any more or less than was required or expressly authorized by the city charter.

Under section 1 of chapter 18 of the Ionia charter the local board was specifically given the following powers: the power to examine; the power to correct; the power to add names, valuations and descriptions wrongfully omitted; and the power to strike from the roll the descriptions wrongfully thereon.

As we understand it these are no more than the usual powers given to local boards of review. The power to equalize valuations *as between* the several wards of the city is not granted by this section and, as far as we can find, is nowhere referred to in the charter. To find it we must imply it.

No useful purpose would be served in quoting and comparing the property tax provisions of the city

charter with the general tax law. It is sufficient to say that there are many parallels, some of them exact. If we ignore the rather lavish—and we think regrettably careless—use of the words "equalize" and "equalization" in the city charter we find that about the only substantial difference between its main tax provisions and those of the general tax laws lies in the date of the meeting of the local board of review. Throughout the charter a clear distinction seems to be made between the assessment roll of the ward and the assessment rolls of the city. The equalization provisions of the general property tax law recognize the ward as the assessment district in that it enjoins upon the county board of supervisors the duty of examining the assessment rolls of the several townships, wards or cities. (CL 1948, § 211.34, as amended by PA 1956, No 30 [Stat Ann 1957 Cum Supp § 7.52].)

As noted by the defendants, article 10, § 3, of the Constitution (1908) requires a uniform rate of taxation except upon property paying specific taxes. In passing we may say that we are unable to see how this requirement could possibly now be met if the plaintiffs should prevail here.

We finally observe that above-quoted section 17 of the city charter provides "and said general [tax] law shall govern in all things relating to the levy and collection of taxes not herein otherwise *expressly* provided for." (Emphasis ours.)

In our view the important and responsible task of tax equalization and the question of what public body should do it should not be made to depend upon semantic guesswork or implication. Only tax chaos can result, of which we suspect a moderate amount must now prevail in Ionia. If it is the wish of the city fathers of Ionia to have their taxes equalized by a local board in the future we are afraid that the best we can recommend is that they consider amending their charter. What is essentially a local board

of review no more becomes invested with equalization powers by calling it that than may such powers be divested, once adequately given, by calling a local board still something else.

In view of our decision we shall not discuss the other issues raised by the plaintiffs in their petition and briefs. Plaintiffs' petition is denied, without costs, however, a public question being involved.

DETHMERS, C. J., and SHARPE, SMITH, EDWARDS, KELLY, CARR, and BLACK, JJ., concurred.