RICHARD G. PETERS AND THE R. G. PETERS SALT & LUMBER COMPANY v. ANTOINE E. CARTIER.

*Recording laws—Quitclaim deed—Bona fide purchaser—Notice.*

A grantee in a quitclaim deed is not a *bona fide* purchaser, and takes only the interest of his grantor. *Johnson v. Williams*, 37 Kan. 179, and cases there cited.

So *held*, where in recording a deed of wild lands the register omitted two descriptions, of which fact the grantee was ignorant, who soon after mortgaged *all* of the lands, which mortgage was duly recorded, after which a land speculator secured a quitclaim deed of the section containing the omitted lands, and quitclaimed one of the *omitted* descriptions to a lumberman, who had sufficient notice and knowledge to put him upon inquiry, which, if made, would have disclosed the real condition of the title, which inquiry he failed to make.

Appeal from Mason. (Judkins, J.) Argued January 24, 1890. Decided April 11, 1890.

Bill to remove cloud from title, and for an injunction. Defendant appeals.    Affirmed.    The facts are stated in the opinion.

*Dovel, Smith & Smurthwaite,* for complainants, contended:

1. Under the facts in this case defendant is not a good-faith purchaser, within the meaning of How. Stat. § 5683.

2. Defendant's *actual* knowledge of the Peters mortgages was sufficient to put him upon inquiry; citing *Clark v. Holland,* 72 Iowa, 34; and see, as to the record of a mortgage being constructive notice, *Alderson v. Ames,* 6 Md. 52, cited with approval in *Edwards v. McKernan,* 55 Mich. 528.

3. How. Stat. § 5653, providing that a quitclaim deed shall be sufficient to pass all the estate which the grantor could *lawfully* convey by a deed of bargain and sale, was not intended to place the grantee on an equal footing with the purchaser under a warranty deed, which declares the good faith of the grantor to the amount of the money invested.

4. The United States courts, and the courts of most of the states, hold that a grantee under a quitclaim deed is chargeable with notice of an outstanding title; citing *Dickerson v. Colgrove,* 100 U. S. 578; *Baker v. Humphrey,* 101 Id. 494; *Hastings v. Nissen,* 31 Fed. Rep. 597; *Postel v. Palmer,* 71 Iowa, 157; *Schradski v. Albright,* 93 Mo. 42; *Martin v. Morris,* 62 Wis. 418; *Johnson v. Williams,* 37 Kan. 179; *Marshall v. Roberts,* 18 Minn. 405.

5. But, aside from the force of his deed, the facts show that defendant had both actual and constructive notice of complainants' title, and of sufficient facts to put him on inquiry; citing, on the question of notice, *Converse v. Blumrich,* 14 Mich. 120; *Stetson v. Cook,* 39 Id. 754; *Ins. Co. v. Conant,* 40 Id. 537; *Railroad Co. v. Davison,* 65 Id. 447; *Schweiss v. Woodruff,* 73 Id. 473; *Oliver v. Sanborn,* 60 Id. 346.

*J. B. McMahon,* for defendant, contended:

1. As to the distinction between the effect of actual notice of an unrecorded and recorded deed, counsel cited *Barnard v. Campau,* 29 Mich. 162; *Shotwell v. Harrison,* 30 Id. 180.

2. A purchaser is not bound by any thing put upon record by parties outside of the chain of title through which he claims, and a party tracing the title from Douville back to the government would find nothing to guide him to mortgages by Peters or

other strangers to the record title; citing How. Stat. § 5683; 3 Wash. Real Prop. (4th ed.) 317; *Losey v. Simpson*, 11 N. J. Eq. 246; *Embury v. Conner*, 2 Sandf. 98; *Edwards v. McKernan*, 55 Mich. 527.

GRANT, J. On May 26, 1883, one William G. Hinman, being the owner in fee of the land in dispute, and other lands, sold and conveyed them by warranty deed to complainant Richard G. Peters. The consideration was $20,000. The whole number of acres conveyed was 1,160. They were situated in sections 26, 27, 28, 33, 34, 35, and 36, township 20 N., range 15 W., and section 3, township 19 N., range 15 W., Mason county. They comprised all the lands he owned in that vicinity, and were known among lumbermen as the "Pierce & Hinman Lands." June 1, 1883, the deed was recorded in the office of the register of deeds for Mason county. By the neglect or oversight of the register, the N. $\frac{1}{2}$ of the N. E. $\frac{1}{4}$, and the S. W. $\frac{1}{4}$ of the S. E. $\frac{1}{4}$, of section 34, were omitted from the record.

May 30, 1883, Peters executed a mortgage upon all the lands described in the Hinman deed, and other lands also, for $50,000. This mortgage was recorded June 1, 1883, and the record contained a description of the land here in controversy. This mortgage contained some defects, not material to the issue in this case; and December 24, 1883, Peters and his wife executed another mortgage to correct them. This mortgage covered the same lands as the first, and was recorded January 4, 1884. After the purchase from Hinman the lands were assessed to Peters, and the taxes paid by him and his co-complainant.

Douville knew of the sale to Peters. He was a land speculator. Having learned from the record the condition of the title as it there appeared, he wrote to Hinman, who lived in Pontiac, a letter, dated September 8

1885, offering him $10 for a quitclaim deed of the whole of section 24, township 20 N., range 15 W. The letter contained this statement:

"It is probably worth nothing to you, and I do not know as it will be worth anything to me."

Hinman wrote accepting the offer. Douville thereupon, on September 15, sent him a draft for $10, and a deed for section 34 instead of 24. Hinman testifies that he signed the deed supposing that it was for section 24, and he assigns a good and honest reason for executing such a deed for the latter section. This deed was recorded September 22, 1885.

September 28, 1887, Douville conveyed to Cartier, by quitclaim deed, the S. W. ¼ of S. E. ¼ of section 34; the consideration being $2,500. Before the deed to Cartier was made, Douville procured an abstract of the title, and delivered it to him. This showed the two mortgages above mentioned, and the quitclaim deed to Douville with a consideration of $1. Peters and Douville lived in Manistee; Cartier, in Ludington. Douville employed one Stronach to sell the land for him, offering him $200 to make a sale. Cartier had previously requested Stronach to be on the lookout for pine lands for him. Stronach informed Cartier of this land, and Douville's offer to sell for $2,500. Stronach was a careful timber estimator. He examined the land at the request of Cartier, and reported to him that there were 650,000 of pine timber, worth $6 per 1,000. When Stronach offered the land to Cartier, Cartier replied: "Isn't that the forty that Mr. Peters has a claim on?" Cartier had lived upwards of 30 years in Manistee and Ludington; was well acquainted with Peters; could communicate with him at any time by telephone; kept himself posted, to know where the pine in that region was, and who owned it; went to Manistee to see Douville about the purchase. He further testifies

that his neighbors knew, substantially, what pine he owned, and he knew what pine his neighbors owned. He knew that Douville's title rested upon a quitclaim deed, with only a nominal consideration. Douville refused to warrant his title.

Complainants did not know of the mistake in the record until after the deed to Cartier. Immediately upon learning this fact, they filed the bill to remove the cloud from their title. Decree was rendered in favor of complainants. Cartier alone appeals. Cartier's son, evidently mistrusting the validity of Douville's title, asked his father, prior to the purchase, if he thought Douville was the owner of the land. The above are the essential facts to be gathered from the record.

1. Peters was the owner in fee of this land, and can only be divested of his title by a *bona fide* purchaser without notice of such facts as were sufficient to put a prudent man upon inquiry. Hinman had no title to convey to Douville. Douville knew that Peters had purchased, and that the deed to him was worthless. The execution of the two mortgages—one only a few days after the purchase by Peters, which purchase was known to Cartier—was an assertion of title in the mortgagor. Cartier had actual knowledge of these mortgages, and this alone should have been sufficient in morals, if not in law, to have caused him to investigate the title. But, aside from this, he evidently understood that this land was included in the Peters purchase. It was therefore his duty to inquire into Peters' rights before purchasing. He could have communicated with Peters personally, or by letter or telephone, in a few hours. The conclusion is irresistible that he feared the result of an investigation into the title, and preferred to take his chances of being held to be a *bona fide* purchaser, without investigation. His grantor refused to give him any but a quitclaim deed,

thereby exhibiting a lack of confidence in his title. All the indications surrounding the transaction would, if followed, have speedily led him to the truth. He blindly declined to pursue them. He was not, therefore, a *bona fide* purchaser. The recording laws were never intended as a shield to such transactions.

2. Under the cloak of quitclaim deeds, schemers and speculators close their eyes to honest and reasonable inquiries, and traffic in apparent imperfections in titles. The usual methods of conveying a good title—one in which the grantor has confidence—is by warranty deed. The usual method of conveying a doubtful title is by quitclaim deed. The rule is wise and wholesome which holds that those who take by quitclaim deed are not *bona fide* purchasers, and take only the interest which their grantors had. This rule is adopted in the United States Supreme Court, and in the courts of many of the states. *Johnson v. Williams,* 37 Kan. 179, and cases there cited. It is, therefore, immaterial whether Cartier had notice or knowledge of complainants' title. He must be held to have purchased at his own risk; and Douville, having no title, conveyed none to him.

Decree is affirmed, with costs of both courts.

CHAMPLIN, C. J., MORSE and LONG, JJ., concurred.