OTIS *v.* KENNEDY.

1. EXECUTORS AND ADMINISTRATORS—INDIRECT PURCHASE OF LANDS
OF ESTATE—BONA FIDE PURCHASER.

   A sale of land by an executor under license from the probate
   court, made indirectly in his own interest, is voidable only,
   and not absolutely void, under 2 How. Stat. § 6042, and will
   therefore be sustained as to a subsequent purchaser in good
   faith and for a valuable consideration.

2. SAME—NOTICE.

   There is no rule of law precluding an executor from purchasing
   land previously sold by him in good faith under license from
   the probate court. Hence, the fact, as disclosed by the rec-
   ords, that the purchaser at such sale reconveyed to the execu-
   tor one month thereafter, is insufficient to charge a subsequent
   purchaser with notice of bad faith on the part of the executor,
   especially where the consideration recited in the deed to the
   latter is greater than that named in the first deed; and this is
   so although the first deed was not recorded until the time of
   the reconveyance.

3. RECORDING LAWS—QUITCLAIM DEED.

   The rule that the grantee in a quitclaim deed cannot be a *bona
   fide* purchaser under the recording laws is not to be extended
   to one taking by warranty deed under such grantee.

Error to Wayne; Lillibridge, J.   Submitted November
7, 1895.   Decided December 10, 1895.

Ejectment by Hattie Otis, an infant, by her next
friend, Asa H. Otis, against George Kennedy and Samuel
Kennedy. From a judgment for defendants, plaintiff
brings error. Affirmed.

*James H. Pound,* for appellant.

*John W. Beaumont* and *Fred A. Baker*, for appellees.

LONG, J.   This is an action of ejectment for the recov-
ery of 18 acres of land in Greenfield township, Wayne
county. Plaintiff and defendant George Kennedy both

claim through a common source, to wit, George E. Pillard; plaintiff by devise, and defendant by executor's sale. George E. Pillard died testate. He owned at his death the 18 acres in suit, 30 acres in Dearborn township, and a policy of life insurance of $1,000, and a small amount of cash. The will divided the property into two parts, giving one moiety thereof to his nephew, Frank G. Pillard, a son of the executor, and directed the executor to take and hold the same in trust for said nephew until he was 21 years of age. Out of the other moiety he directed his executor to first pay Charles F. Pillard, a brother, $75, and the remainder of it he gave in equal shares to plaintiff, Hattie Otis, and to her sisters, Jennie and Emma Otis, directing his executor to take the same, and care for it, in trust, to be divided to each one her share when she arrived at the age of 21 years. George F. Pillard was appointed executor and trustee. The will was duly probated. At the testator's death the Dearborn 30 acres were worth about $1,800 and the Greenfield 18 acres $3,150. There was a mortgage on both parcels of $1,700 to the Springfield Savings Bank of Vermont. The debts proved against the estate amounted to $3,449.94 in addition to the mortgage. George F. Pillard, under license of the probate judge, sold at executor's sale both pieces of land, the 18 acres to one James Leonard for $3,000, and the 30 acres to Joseph Goodrich for $1,800, on March 13, 1886. Both sales were duly confirmed by the probate court, and deeds were executed to the purchasers on March 22, 1886. As far as the probate records show, these sales were legal, and the proceeds were used to pay the debts of the estate, and nothing was left for the devisees. Leonard's deed for the 18 acres was not recorded until April 21, 1886, and on that day he executed a special warranty deed back to George F. Pillard, covenanting against his own acts only, for the consideration of $3,100. This deed to Pillard was recorded April 22, 1886. Pillard owned two acres of land

lying at the northwesterly corner of the 18-acre parcel, and on April 27th he sold the entire parcel of 20 acres to William Kennedy for $3,600. Afterwards, on April 3, 1888, William Kennedy sold the 20 acres to George Kennedy for $8,000. Samuel Kennedy claims no title. At the time of the purchase by William Kennedy he had an abstract of title examined by Mr. Hoyt Post, an attorney at law, who pronounced the title good and sufficient. Defendant George Kennedy had a like examination made when he purchased it, and claims to have relied upon it in making his purchase. Both William Kennedy and defendant were *bona fide* purchasers without notice of fraud or irregularities, except such as may be imputed to them from the records. During William Kennedy's ownership he built a house on the two acres of land at an expense of about $2,000. In addition to this, he built a barn, cleared the land, dug ditches, and thoroughly tiled it, and expended large sums each year in bringing it under cultivation. He also set out two acres of grape vines, and built new fences around it. During George Kennedy's ownership an orchard of 800 fruit trees was set out, which is now alive and bearing. He also built two greenhouses and a bee and honey house. It is claimed that the land is now in excellent condition, and valuable, because of the improvements made by the defendant and his immediate grantor, and also by reason of the rise in values in Detroit suburban real estate. No claim is made for improvements, and counsel says for the reason that he had, previous to the inception of this suit, begun a suit in equity to quiet his title against all parties interested, and he relies upon that proceeding for a more effective and complete remedy.

The plaintiff claims that the defendants are not *bona fide* purchasers for the reasons:

1. That an examination of the records showed fraud, as any person inspecting them would have ascertained that, while the land purported to have been sold to

James Leonard, yet Leonard within a short time deeded back to George F. Pillard, the executor, and that under the statute such conveyance is void.

2. That the defendants knew, and had known all their lives, the people affected, and were advised of the fact that George F. Pillard, through whom they derived title, was the executor of the estate of George E. Pillard, deceased; that defendant's grantor, William Kennedy, was his brother, and a partner in the business, and was a commissioner on claims and appraiser of the Pillard estate; that the evidence shows a conspiracy between William and George Kennedy and George F. Pillard to defraud the plaintiff out of the land, or that at least there was sufficient evidence to go to the jury for their consideration of that question.

3. That the sale by the executor to Leonard was not *bona fide*, but was an indirect sale to Pillard himself, as Leonard paid no money to Pillard; and that $3,000 of the money paid by William Kennedy was paid in to the estate, and accounted for by the executor, to pay the debts of the estate; and that the executor fraudulently manipulated the estate, and appropriated it to his own use.

We shall dispose of the last two questions first. The evidence shows that William Kennedy was one of the commissioners on claims on the estate, but it fails to show that he had any knowledge, or that George Kennedy had any actual knowledge, that the sale from Leonard back to the executor was not a *bona fide* transaction. The record discloses that the sale of the lands was necessary to meet the debts preferred against the estate, which appear to have been in an amount almost equal to its value. But, whatever may be said of the knowledge of William Kennedy, or notice to him by reason of his having been one of the commissioners on claims, there is nothing to show that George Kennedy had knowledge or notice of the situation of the estate, or that he had knowledge or notice that the sale to Leonard was not made in good faith and for a valuable consideration, except such notice as the recording of the

deeds would disclose; so that the only question which need be discussed is whether, under the circumstances, George Kennedy can be said to be a *bona fide* purchaser.

2 How. Stat. § 6042, provides:

"The executor or administrator making the sale, and the guardian of any minor heir of the deceased, shall not, directly or indirectly, purchase or be interested in the purchase of any part of the real estate so sold, and all sales made contrary to the provisions of this section shall be void," etc.

Counsel for plaintiff contends that under this statute the transfer from Leonard to the executor was absolutely void, and therefore defendant took no title.

At the common law, a purchase by an executor or other person acting in a trust capacity was forbidden, as it is by the above statute. This statute was before this court in *Hoffman* v. *Harrington*, 28 Mich. 90. That was an action of trespass, and plaintiff claimed title under administrator's sale. Hamilton, as administrator of the estate, sold the land to one Minnie, and Minnie's heirs conveyed back to Hamilton, and he conveyed to plaintiff. Chief Justice Christiancy held that under this statute all sales made contrary to its provisions were null and void. He said: "There is no exception or qualification, and no saving of rights in favor of purchasers of any kind, with or without notice, nor in favor of any person whatever." That opinion was concurred in by Mr. Justice Cooley. Mr. Justice Graves dissented from those views, and said that the provision was a mere enactment of the rule which the courts had laid down prior to its passage, and, like many others, was simply intended as a legislative recognition of a doctrine developed by the tribunals, and considered worthy of being made stable by adoption into the statute book. Speaking of the methods and principles guiding the courts in the application of the rule before it was crystallized into a statute, he says:

"These principles were not set aside or impugned. They remained as vital as ever. And since the only change effected was in carrying this rule, which was already law, from the unwritten to the written code, I cannot see why it should be administered in a new spirit, and contrary to the principles natural to it. They accompanied the rule into the statute book, as I think, and should be recognized in applying it. If we reject these principles, and take the provision as one to be applied in a sense as universal as the terms will literally allow, then every sale by an executor, administrator, or guardian in which the trustee has an interest, however secret, is *ipso facto* void in the sense of being a nullity. It has no force whatever. It is bad as to everybody and all transactions. No one is bound by it, and no one can be benefited by or through it. Whether the deed given on the public sale is recorded or unrecorded, whether a full price was or was not paid and applied for the estate, whether the sale was or was not confirmed in regular form by the court, whether or not the party claiming title under it through a subsequent purchase bought in good faith for a full price and without notice, can make no difference. It never had effect, because the law forbade it. We are compelled to go to this length, or confess that such a sale is not made positively illegal and so completely nugatory. If not void as a sale, it must have some of the legal possibilities of a valid sale. There is no practical middle ground. We cannot stop short of the extreme view without confessing that the law was not intended to make such sales wholly ineffectual and inoperative as to all persons and circumstances, nor without admitting that they may avail to some purposes, and for and against particular parties, and hence that they are to be regarded simply as voidable, and not as nullities; and, if we accept this conclusion, we tacitly admit that in applying the act we are not only authorized, but required, to mitigate its scope. Now, I understand it to be conceded that we ought to qualify its operation. If we may do this, if we may say that such a sale is not a nullity, but may have some force, by what principle are we to be governed? Where shall we pause? What reason can be given for halting short of the view which was settled when the rule was worked into the statute?"

Upon such reasoning as this, which was concurred in by Mr. Justice CAMPBELL, they held that under such sales, when the property has been resold to a *bona fide* purchaser without notice before an attempt to impeach the sale, it will stand, and such purchaser will be protected; and it was said, "This was the doctrine when the legislature transferred the rule, and it belongs to the rule." This was the rule before the enactment of this statute, as clearly held in *Wyman* v. *Hooper*, 2 Gray, 141; *Jackson* v. *Walsh*, 14 Johns. 407; *Robbins* v. *Bates*, 4 Cush. 104; *Blood* v. *Hayman*, 13 Metc. (Mass.) 231; *Lessee of Lazarus* v. *Bryson*, 3 Bin. 54; *Sweet* v. *Southcote*, 2 Brown, Ch. 66; *Lowther* v. *Carlton*, 2 Atk. 242; *Brandlyn* v. *Ord*, 1 Atk. 571; *Ferrars* v. *Cherry*, 2 Vern. 383.

We think the true principles of construction of this statute were stated by Justice GRAVES, and under the circumstances stated in the present case Mr. Justice CHRISTIANCY might have reached a different conclusion. There was a link missing in the chain of title in that case in the claim under the administrator's sale. The deed from the administrator to the purchaser at such sale had been lost, and was never recorded. Justice CHRISTIANCY, commenting upon this, said:

"As the administrator's deed to Minnie [the purchaser at the administrator's sale] was not recorded, the plaintiff did not purchase on the faith of its record. Had it been recorded, and had the plaintiff purchased on the faith of its record, without notice that the purchase was made for the administrator, the case would probably have come within the registry laws, upon the same principle that the deed from Thorn [the deceased] himself would have come within them, so far, at least, as regards questions of the kind here presented."

We think that the views expressed by Justice GRAVES upon this question have been followed by the later decisions of this court. In *Taylor* v. *Brown*, 55 Mich. 482, at the sale of land by executors under license of the probate

court, the purchaser was the legal guardian of the minor heirs of the deceased. The full cash value of the land was paid, the sale fairly made, and the fact of guardianship was known to the executors and to the probate judge, who confirmed the sale. The guardian's deed was recorded May 23, 1873. On October 5th of that year she sold to one of the defendants. His deed was recorded January 4, 1875. On May 8th following he sold one-half of the land to another defendant. Neither of the defendants knew, at the time of his purchase, of the guardianship of the original purchaser. The probate records, however, showed fully the fact that the purchaser at the original or executors' sale was the guardian of the infant heirs of the deceased owner of the land. The action was in ejectment by one of the heirs. This statute was under consideration in that case, and the circuit judge held that the defendants' title, under the facts stated, was fully protected, and that the plaintiff could not recover. It was said by this court:

"The plaintiff's case is devoid of all equity, and both the letter and spirit of the law require that these defendants should be protected in the enjoyment of the property they have in good faith and for a full and valuable consideration purchased and paid for. The statute (2 How. Stat. § 5683) does not require a person, in order to keep within its provisions in a case like this, to examine beyond the registry of deeds for outstanding claims when he makes his purchase. It is very clear from the record that both the guardian and executors acted in perfect good faith, and, so far as we can discover, for the best interests of the wards as well as that of the estate."

The statute referred to in that case provides:

"Every conveyance of real estate within this State hereafter made, which shall not be recorded as provided in this chapter, shall be void as against any subsequent purchaser in good faith and for a valuable consideration of the same real estate, or any portion thereof, whose conveyance shall be first duly recorded."

In *Larzelere* v. *Starkweather*, 38 Mich. 96, while a construction of this statute was not necessary to the decision, as the party purchasing at the administratrix's sale did so in the interest of the heirs, yet it appeared that the heirs of the purchaser afterwards transferred the title to the administratrix; and Mr. Justice MARSTON, speaking of the rule, said:

"I am not prepared to hold, under such circumstances, that third parties, acting in good faith, could not acquire rights under such a conveyance, even although it might afterwards be shown by evidence *dehors* the record that the administratrix was indirectly and secretly interested."

In *McKay* v. *Williams*, 67 Mich. 547, Mr. Justice CHAMPLIN, referring to section 6042, 2 How. Stat., said, "This statute was merely an affirmance of the common law."

We are therefore compelled to hold, both upon reason and authority, that sales of the kind in question are voidable only. The statute must be read in connection with the registry laws. 2 How. Stat. § 5683.

Upon the question of whether there was evidence upon the face of the record to create in the minds of the defendants such a suspicion of bad faith in the executor as to put them upon inquiry, it appears that Pillard did not purchase until one month after the sale to Leonard. It is true that the deed to Leonard was not recorded until the date of the execution of the deed back to Pillard; but it frequently occurs that deeds are not put upon record on the date of their execution. We think this fact could not be construed as notice to a subsequent purchaser that anything was wrong about the purchase by Pillard, especially in view of the fact that the consideration in the deed to Pillard was greater than the purchase price recited in the Leonard deed, and also in view of the settled rule that the subsequent purchase by an executor of land which he has previously and in good faith sold under license of the probate court is

legal. That such purchases are legal is held by Woerner
in his work on the American Law of Administration
(section 334, p. 702), in which the author says: "But
the rule that an administrator cannot buy indirectly, or
acquire the property sold by him as administrator by the
interposition of a third party, does not extend to a sub-
sequent *bona fide* purchase by him from one who himself
purchased in good faith at the administrator's sale."
This doctrine is supported by *Wayland* v. *Crank*, 79 Va.
602; *Welch* v. *McGrath*, 59 Iowa, 519; *Staples* v. *Staples*, 24
Grat. 225; *Silverthorn* v. *McKinster*, 12 Pa. St. 67; *Creveling*
v. *Fritts*, 34 N. J. Eq. 134.

As to the proximity of the date of record of Pillard's
deed to Leonard and the date of the deed from Leonard
to him being notice of bad faith, this case is distinguish-
able from *Winter* v. *Truax*, 87 Mich. 324, and *McKay* v.
*Williams*, 67 Mich. 547. In both of those cases the con-
veyances by the trustee to the purchaser and back to
the trustee were made upon the same day, and for the
same consideration, and the decisions are justly based
upon the principle that the notice upon the face of the
records was that both conveyances were a part of one and
the same transaction; but such notice does not appear in
this case.

The fact that the deed from Leonard to Pillard was a
special warranty was not evidence of bad faith. While
it is held in *Peters* v. *Cartier*, 80 Mich. 129, that a grantee
in a quitclaim deed cannot be a *bona fide* purchaser under
our recording laws, yet the rule is otherwise where a
grantee obtains title through a warranty deed, as in this
case. William Kennedy had a deed of warranty from
Pillard, and conveyed to George Kennedy by warranty.
See *Culbertson* v. *Witbeck Co.*, 92 Mich. 469. But the
deed from Leonard to Pillard was something more than
a deed of quitclaim. It was in fact an assertion that the
executor's sale to him was *bona fide*.

In addition to these facts, the defendant George Ken-

nedy found his brother in possession for two years, holding and improving the property; yet before purchasing he had the abstract examined by one of the leading attorneys of Detroit, by whom the title was pronounced perfect. To him nothing appeared suspicious. Whatever puts a party on inquiry amounts to notice, provided it would lead to the knowledge of the requisite fact by the exercise of ordinary diligence and understanding. *Wilson* v. *McCullough*, 23 Pa. St. 440. The only fact that can be claimed, under the circumstances stated, is that some secret understanding existed between Leonard and Pillard; but the record would not disclose this, and there was nothing upon its face that would arouse a suspicion that any secret arrangement had been made by which Leonard was to purchase in the interest of Pillard. They gave it the outward appearance of a *bona fide* transaction by Leonard's holding the title a month, and by making the consideration greater when the conveyance was made back to Pillard. The principle which governs such cases is stated in *Millar* v. *Olney*, 69 Mich. 560, as follows:

"The extent to which the cases have gone is that, where the fact of a prior conveyance or incumbrance is brought to the knowledge of the subsequent purchaser or incumbrancer, he must be held to take subject to such prior conveyance or incumbrance; or, when such circumstances are shown to exist as would put an ordinarily prudent business man upon inquiry as to such prior conveyance or incumbrance, then he is charged with notice of such facts as, upon inquiry, he could have ascertained; but, where circumstances alone are relied upon, with no proof of actual knowledge, they must be of such character that failure to make the inquiry amounts to bad faith."

No such facts were shown by the record.

The learned circuit judge before whom the case was tried held in accordance with the views here expressed, and directed a verdict in favor of defendants. The judgment must be affirmed.

The other Justices concurred.