KESLER *v.* JOHNSON.

DEEDS—QUITCLAIM—INNOCENT PURCHASERS.

Where one having an interest in lands conveys the same by quitclaim deed, under a parol agreement that the grantee shall institute proceedings to perfect the title for the grantor, the latter cannot, upon a breach of such agreement, recover the land, as against an innocent purchaser thereof for value.

Appeal from Wayne; Waite, J. Submitted January 11, 1900. Decided February 20, 1900.

Bill by Charles H. Kesler against Ransom C. Johnson, James D. Johnson, James B. Gardner, and Frank Updike to set aside certain conveyances of real estate. From a decree dismissing the bill, complainant appeals. Affirmed.

One John C. Casler died testate in 1867.     Two clauses of his will read as follows:

"I give and bequeath to Albert Austin Casler, Willie Casler, and Charles Henry Casler all the north half of the northwest quarter of the northwest quarter of section six (6), town six (6) north, of range eight (8) east; my beloved wife, Ellen C. Casler, to have the use and occupation of said described premises so long as she shall personally occupy the same.

" I give and bequeath to my beloved wife, the said Ellen C. Casler, the northeast quarter of the northwest quarter, and the northwest quarter of the northwest quarter, of section six (6), town six (6) north, of range eight (8) east, for her sole use and benefit during her natural life, and, at and after her decease, then to be equally divided between the heirs of my beloved daughter, Nancy, the possession and title to vest in them severally when they become of full age, and after the death of my said wife, Ellen Casler."

In 1870 his widow remarried, rented the farm, and went to the city of Flint to reside, where she died in 1891. August 10, 1883, Albert and Willie Casler quitclaimed their interest in said land to complainant.     On August 13th of the same year, complainant conveyed by quitclaim deed the undivided one-half interest in said land to defendant James D. Johnson.     On June 6, 1891, Johnson, in consideration of $500, conveyed the same interest to defendant Gardner.     Subsequently, but the precise date does not appear, Updike, who had lived upon the place six or seven years as the tenant of the widow, entered into a land contract for the purchase of the 40 acres including the land in dispute, for $1,600, upon which he had paid, at the time this suit was brought, $900.     Complainant seeks to have all these conveyances set aside.     The theory

of the bill is that he agreed, in consideration of this deed, with Ransom C. Johnson, an attorney-at-law, that Johnson would bring suit and recover said land for complainant; that the deed was made to James, a brother of Ransom, at the suggestion of Ransom, because it would not look well to convey it directly to him; that Ransom did not take any steps or institute any proceedings to recover the land as he had promised and agreed to, and therefore he is entitled to recover it.

The case was commenced in Genesee county, and was transferred to Wayne county for hearing. It was heard upon proofs taken in open court. When complainant rested, the court announced that the estate of Casler had not been settled, and that the case involved an interpretation of the will, which should have been had in the probate court. It was arranged to postpone the argument upon this point until the afternoon, and that meanwhile Mr. Gardner and Mr. Updike might be sworn upon the question of good faith. Both testified to paying a valuable consideration, and without any notice of any defect in the title. The testator's daughter, Nancy, was the wife of Mr. Gardner. She had three children by Mr. Gardner, one of whom is still living. Upon the reconvening of the court in the afternoon, Mr. Gold, the solicitor for Mr. Johnson, announced that he had witnesses present to show that R. C. Johnson fully paid for and settled with the complainant for the land. The court, upon its own motion, dismissed the complainant's bill upon three grounds:

1. That the estate was not settled.

2. That Gardner and Updike were *bona fide* purchasers, and had the right to rely upon the quitclaim deed of the complainant.

3. That, since Updike and Gardner were good-faith purchasers, the deed to Johnson could not be set aside, and that complainant's remedy against Ransom C. Johnson was at law.

*James M. Goodell*, for complainant.

*George R. Gold* (*Mark W. Stevens*, of counsel), for defendants.

GRANT, J. (*after stating the facts*).   It is urged on
behalf of defendants that complainant obtained only a life
estate in the land, contingent upon the death of the widow
before the children of Nancy became of full age.   In our
view of the case, it is unnecessary to determine this ques-
tion.   It being determined that Gardner and Updike pur-
chased without notice of the parol agreement between the
complainant and Ransom C. Johnson, the question is, Are
they *bona fide* purchasers, and as such to be protected, or
did they take their title by quitclaim subject to this parol
agreement?   The learned counsel relies upon the doctrine
enunciated in the following cases: *Peters* v. *Cartier*, 80
Mich. 129 (45 N. W. 73, 20 Am. St. Rep. 508); *Cartier*
v. *Douville*, 98 Mich. 24 (56 N. W. 1045); *Thorkildsen*
v. *Carpenter*, 120 Mich. 420 (79 N. W. 636).   Those
cases do not apply.   This is not a case where the grantor
had no title to convey by his quitclaim deed, or where any
other parties had outstanding equities.   It was held in
*Johnson* v. *Williams*, 37 Kan. 179 (14 Pac. 537, 1 Am.
St. Rep. 243), that a quitclaim deed conveyed to the
grantee all the rights, interests, title, and estate of the
grantor in and to the land, unless otherwise specified by
the deed itself.   Complainant claims to own the title
which he conveyed.   He might have inserted in his deed
a defeasance clause, which would have been notice to the
world.   Instead, he chose to convey whatever title he had
to Mr. Johnson, under a parol agreement that Johnson
would do certain things for him.   After 12 years, during
which the title has passed into the hands of others, who
purchased without any notice, and who have paid full
consideration therefor, he seeks to recover the land, be-
cause the very title which he conveyed was burdened by a
parol agreement.   There is no justice or equity in the
claim.   If some third party at the time of the conveyance
to Johnson had had a prior outstanding interest in the
land, then the rule of the above cases might apply.
Equity does not permit a party to convey his title, even
by quitclaim, and make a contemporaneous parol agree-

ment by which the title may be defeated in the hands of a subsequent grantee without notice. We are cited to no authority holding the doctrine contended for. Under complainant's own statement, Ransom C. Johnson, the attorney, failed to carry out his agreement. If he failed to perform it, he has ample remedy at law against Johnson, but equity will not permit him to recover the land from *bona fide* purchasers. It is due to Ransom C. Johnson to say that no opportunity was given him by the court to make a defense.

We think the defendants were entitled to the costs as taxed.

Decree affirmed.

The other Justices concurred.