MESSENGER *v.* PETER.[1]

1. EQUITY PLEADING—CROSS-BILL—ORDER PRO CONFESSO.

An answer in the nature of a cross-bill may be taken as confessed, in the absence of an answer from complainant.   Ch. Rule 11, subd. *c.*

2. SAME.

And in such case the new facts set up by the cross-bill must be accepted as true.

3. SAME.

But the pleading is to be taken most strongly against the pleader, and, if the allegations are vague and indefinite, proof should be required.

4. SAME—TITLE TO LANDS.

Hence, where, in a suit to quiet title, defendant set up, by way of cross-bill, that he held a deed from the original owner of the premises, for which he paid a valuable consideration, without notice of any previous conveyance by the grantor, and it appeared on the hearing that his deed was not one that would entitle him to protection as a *bona fide* purchaser, the court properly refused a decree for defendant, notwithstanding the cross-bill had been taken as confessed.

5. DEEDS—EXECUTION IN FOREIGN STATE—RECORDING LAWS.

Prior to Act No. 112, Pub. Acts 1891 (3 Comp. Laws, § 8964), a deed executed in another State, if acknowledged before a notary public, was required to have a certificate authenticating the acknowledgment.   By that act such certificate was made unnecessary in case the acknowledgment bore the seal of the notary; and it was further provided that, when

---

[1] Rehearing denied February 11, 1902.

any deed executed in accordance with such act had been theretofore recorded, such record should be *prima facie* evidence of the due execution of the deed, to the same extent as if authenticated as required by the statute in force at the time the deed was recorded. Where a deed executed prior to the passage of such act, conforming to the requirements thereof, but not to the statute in force at the time of its execution, was recorded subsequent to the passage of the act, *held*, that such record was *prima facie* evidence of the due execution of the deed.

6. TAXES—EQUALIZATION—BOARDS OF SUPERVISORS.
The statute providing for the equalization of the assessment rolls of the several townships, wards, or cities of a county by the board of supervisors (1 Comp. Laws, § 3857) contemplates that the assessing district shall be the unit for equalization; and an equalization which deducts a stated sum from the aggregate valuation of the several wards of a city is insufficient to authorize the levy of any State or county tax within the county.

7. RECORDING LAWS—QUITCLAIM—BONA FIDE PURCHASER.
An unrecorded deed is superior to a subsequent quitclaim from the same grantor.

8. EQUITY JURISDICTION—QUIETING TITLE—POSSESSION.
So long as the defendant in a suit to quiet title is not in possession, it is immaterial that complainant is not, or that a third person is. 1 Comp. Laws, § 448.

Appeal from Montcalm; Davis, J. Submitted November 20, 1901. Decided December 10, 1901.

Bill by Helen Messenger against James B. Peter to quiet title. From a decree for complainant, defendant appeals. Affirmed.

*N. O. Griswold*, for complainant.

*G. W. Davis*, for defendant.

HOOKER, J. To a bill filed to quiet title, containing the requisite allegations of title in the complainant, and that defendant was claiming title under several void tax deeds and was not in possession, the defendant filed an answer in the nature of a cross-bill, which, after denial of the com-

plainant's title, and claim of title by the defendant under several tax deeds, alleged title in the defendant under a deed from the owner of the government title, for which he paid a valuable consideration, and that he took said deed without notice or knowledge that said owner had previously conveyed the premises. The answer prayed that the defendant be decreed to be the owner in fee, and, in the alternative, that his tax titles set up in complainant's bill might be decreed liens upon the premises, and that they might be foreclosed in this cause. No answer was filed to this cross petition or bill as provided by subdivision *c* of Chancery Rule 11, and an order taking it as confessed was entered, as may be done in a proper case. See *Coach* v. *Kent Circuit Judge,* 97 Mich. 563 (56 N. W. 937); 2 Daniell, Ch. Prac. 1553, note 1; 1 Hoff. Ch. Prac. 353; Jenn. Ch. Prac. 394; *White* v. *Buloid,* 2 Paige, 164.

The defendant claims that complainant's default required that the court accept as true the new facts set up in the cross-bill, viz., that the defendant obtained a deed of the premises from the original owner, that he paid a valuable consideration therefor, and that he took it without notice or knowledge of a former conveyance of the same. The rule is that such allegations of fact must be taken as true upon an order *pro confesso;* and the complainant cannot, therefore, question upon this record the allegations that defendant took a deed from the person who at one time held original title, for value, and without notice of his previous conveyance.

To complete her chain of title, the complainant produced the record of a deed from John D. Fargo to one Meadows. The deed appears to have been dated on July 22, 1890, and executed upon that day before a notary public in South Dakota, who appended a certificate of acknowledgment under his notarial seal. There was no record of a certificate authenticating this acknowledgment, and at the time of the execution of the deed such was necessary to entitle it to record. The deed was recorded on November 29, 1893. At that time it was entitled to record, unless the

statute (3 Comp. Laws 1897, § 8964) which was passed in 1891 (see Act No. 112, Pub. Acts 1891) should be applied to such unrecorded deeds only as were executed after its passage.    The deed was valid between the parties when executed, under our decisions.    Had it been recorded at once, though before the act took effect, such record would now be evidence, under the express provisions of the law. The act clearly evinces a legislative intent to make the record evidence, although the deed may have been executed and recorded before the law was passed; and we see no reason for believing that it was the design to cure a record already made, but to refuse record to a pre-existing deed, valid between the parties, and having the statutory requisites.    The record was admissible, and complainant's title was established *prima facie.*

The tax deed for the tax of 1886 is attacked upon several grounds, among which is the claim that the equalization by the board of supervisors was invalid.    The record of the board of supervisors shows the following:

"Proceeding at the June session of the board of supervisors of Montcalm county, continued and held at the court-house in the city of Stanton, in said county, on Thursday, June 17th, A. D. 1886.

"The committee on equalization, by Mr. Hoy, submit their report.    The report, upon motion, was thereupon adopted by the following vote:  Ayes:  Messrs. Avery, Baker, Coats, Church, Dickinson, Dyer, DeWolf, Denton, Holland, Hoy, Johnson, Lucas, Maynard, Miner, Porter, Rice, Stevens, Satterlee, Whitelery, Ward—20.    Nays: Messrs. Coutter, Jenson, Newton, Swarthout—4.

"Mr. Jenson moves that the sum of $10,000 be deducted from the equalized valuation of the township of Cato, which motion was lost."

Following the foregoing was a table under headings as shown below, the amounts being placed opposite the names of the towns, in which appeared the township of Home and the city of Greenville, among others, thus:

|  | Acres | Real as Assessed | Personal as Assessed | Total as Assessed | Added to Real | Deducted From Real | Real as Equalized | Aggregate |
|---|---|---|---|---|---|---|---|---|
| Greenville, First W..... |  | 216,267 | 46,700 ⎤ |  |  |  |  |  |
| Greenville, Second W. |  | 276,716 | 182,920 ⎬ | 1,021,209 |  | 191,209 | 530,800 | 830,000 |
| Greenville, Third W.... |  | 229.026 | 69,580 ⎦ |  |  |  |  |  |
| Home ....... | 23,028 | 382,505 | 83,335 | 465,840 | 59,160 |  | 441,665 | 525,000 |
| Totals | carried | out |  |  |  |  |  |  |

[Report signed by the committee.]

The points relied upon to invalidate the equalization are: *First*, that the record does not clearly show what was adopted as the report of the committee; *second*, the grouping of the three wards of Greenville for the purpose of equalization, it being contended that these wards should have been mentioned separately in the respective columns.

The statute (1 Comp. Laws, § 3857) requires the board of supervisors to "examine the assessment rolls of the several townships, wards, or cities, and ascertain whether the relative valuation of the real property in the respective townships, wards, or cities has been equally and uniformly estimated." See Act No. 153, Pub. Acts 1885, § 100. If they deem it unequal, they proceed to equalize it in the manner thereinafter pointed out, for the purpose of apportioning the State and county taxes; and their action must be certified to upon each roll, which shall thereafter be delivered to the supervisor of the proper township, ward, or city. It is apparent from the foregoing that the assessing district was intended to be the unit for equalization, and an equalization that deducts an aggregate sum from the total valuation of three wards cannot be helped by a presumption that the wards have been compared separately with each other and with other townships. It might as well be said that an aggregate deduction from the total assessed valuation of real estate in the county would show that a comparison had been made, and that, while assessments had been excessive, they were uniformly so, and therefore

129 MICH.—7.

that an aggregate deduction should be made from all at a rate to be ascertained by ratio and proportion.

It is contended that it is not shown that the tax was made excessive by this attempt at equalization, and therefore the tax cannot be held invalid. The same might be said had no attempt at equalization been made. It may be that the taxes upon this property in the township would not have been affected by a proper equalization of the wards in Greenville, and such taxes might have been less; but we have no way of knowing what the effect would have been had the equalization been made. The equalization affects the entire county,—a change in one assessing district increasing or diminishing the tax in every other. This attempted equalization was no equalization, and there was therefore no jurisdiction to levy any State or county tax. *Yelverton* v. *Steele*, 36 Mich. 62; *Maxwell* v. *Paine*, 53 Mich. 30 (18 N. W. 546); *Auditor General* v. *Roberts*, 83 Mich. 471 (47 N. W. 442). We are constrained to say, therefore, that the sale and deed for the tax of 1886 were invalid.

It remains to inquire whether defendant's deed of the original title is a defense to this suit. It is shown that his grantor had parted with his title some years before, by his deed to Meadows, complainant's grantor. The deed to the defendant was a quitclaim, and was of itself ineffective to convey a title if the vendor had none. *Peters* v. *Cartier*, 80 Mich. 124 (45 N. W. 73, 20 Am. St. Rep. 508). If it can be made effective, it must be by reason of the recording act, or complainant's failure to answer the cross-bill. Any doubts that may have existed as to the superiority of an unrecorded deed over a subsequent quitclaim deed from a common grantor are settled by the case of *Peters* v. *Cartier*, 80 Mich. 129 (45 N. W. 73, 20 Am. St. Rep. 508), where it was unqualifiedly said that "those who take by quitclaim deed are not *bona fide* purchasers." Other Michigan cases bearing upon the question are *Battershall* v. *Stephens*, 34 Mich. 74; *Eaton* v. *Trowbridge*, 38 Mich. 460; *De Veaux* v. *Fosbender*,

57 Mich. 587 (24 N. W. 790). Of these cases, the earlier ones intimate that a grantee under a quitclaim deed may be a *bona fide* purchaser, and therefore entitled to the benefit of the recording laws in regard to purchase without notice. The later cases seem to cast some doubt upon the proposition, while the case of *Peters* v. *Cartier, supra,* which deals with a deed which does not limit the land conveyed to the interest of the grantor, explicitly states that notice must be taken of the rule that a quitclaim deed conveys no more interest than the grantor has to convey. See, also, *Beakley* v. *Robert,* 120 Mich. 209 (79 N. W. 193); *Otis* v. *Kennedy,* 107 Mich. 321 (65 N. W. 219); *Hoffman* v. *Simpson,* 121 Mich. 501 (80 N. W. 1133); *Dickerson* v. *Colgrove,* 100 U. S. 578; *Baker* v. *Humphrey,* 101 U. S. 494. It becomes unnecessary, therefore, to inquire whether Meadows or his grantee was in possession in 1893, when this deed was taken, though we think there is little doubt that he was, under the proof.

But it is said that the complainant has admitted that the defendant has the original title, by her failure to answer the cross-bill. Had the cross-bill merely stated generally that the defendant was the owner of the original title, it may be doubted whether the fact would be sufficiently well pleaded to justify a decree *pro confesso;* but we need not decide that question, because in this case defendant qualified the statement by setting up that he had a deed from the person who held the title, and that he paid for it, and took it without notice that he had previously conveyed. This pleading should be taken most strongly against the pleader, for the purpose of determining the character of the complainant's admissions; for it is only when the allegations of the bill are clear and positive that proof is unnecessary upon default. Where, as in this case, the allegation is vague and indefinite, proof should be required. *Ward* v. *Jewett,* Walk. Ch. 45; Puter. Pl. & Prac. 105. Hence we may say that she at most admitted that the deed mentioned was a quitclaim deed, as in fact it was. Had the cross-bill expressly stated that it was a

quitclaim deed, the complainant might safely have permitted it to be taken as confessed; for, as we have seen, it would have failed to state a title that could prevail over the deed to Meadows. It appeared upon the trial that defendant's title did rest on a quitclaim deed, and that fact of itself justified the court in refusing to grant a decree for the defendant upon an admission clearly disproved. While an order *pro confesso* permits the taking of a decree without proofs, it is only such a decree as the court thinks just (1 Barb. Ch. Prac. 369), and only in conformity to the material allegations (*Ward* v. *Jewett, supra; Covell* v. *Cole*, 16 Mich. 223).

There is nothing in the claim that the complainant was not in possession when her suit was instituted, because it is not pretended that the defendant was in possession, and therefore, under 1 Comp. Laws, § 448, it was immaterial whether she was in actual possession or not; and this statutory right is not affected by the fact that a stranger to the suit occupies the land.

The decree of the circuit court is affirmed, with costs.

MONTGOMERY, C. J., MOORE and GRANT, JJ., concurred. LONG, J., did not sit.