## BONNINGHAUSEN *v.* HANSEN.

1. APPEAL AND ERROR—SUIT TO DECLARE A DEED VOID—DE NOVO REVIEW.

On appeal in suit to have a deed to defendant declared void and that plaintiff be decreed to have title free and clear of claims of defendant and others, being a chancery case, it is considered *de novo* by Supreme Court.

2. DEEDS—WARRANTY—QUITCLAIM—EXECUTION OF INSTRUMENTS—RECORDING—GOOD-FAITH—STATUTES.

Under recording statute as in force prior to 1915, a warranty deed executed before but not recorded until after a quitclaim deed to another by the same grantor was not void, as a grantee under a quitclaim deed was not then deemed to be a subsequent purchaser in good faith, the amendment of that year removing such disparagement not affecting conveyances theretofore executed (3 Comp. Laws 1897, § 8988, as amended by Act No. 199, Pub. Acts 1915 [3 Comp. Laws 1929, § 13304]).

3. Same—Warranty—Quitclaim—Recording.

In 1892, where common grantor had executed a warranty deed to plaintiff's predecessor in title and a quitclaim deed to defendant's predecessor in title and quitclaim grantee recorded his deed before warranty grantee did so but latter's deed was recorded prior to recording of a warranty deed executed by the quitclaim grantee, the latter deed, having been subsequent on the record to that of the warranty grantee's, was void (3 Comp. Laws 1897, § 8988).

4. Same—Fraud—Parties.

In suit to set aside deed to defendant, where her predecessor in title received a deed from same grantor through whom plaintiff claims by prior grant and several mesne conveyances, defendant may not create a superior title in herself through plaintiff's alleged fraud upon his immediate predecessor in title where such predecessor in title of plaintiff is not a party to the suit and question of fraud is not before the court.

5. Same—Superior Title—Limitation of Actions.

In suit to set aside a deed to defendant where her predecessor in title received a quitclaim deed executed in 1892 by grantor who had previously executed a warranty deed to grantee who in turn had conveyed the premises to another party who had recorded both his own and predecessor's warranty deeds before quitclaim grantee's warranty deed to another party had been recorded, claim that cause of action arose in 1892 and was therefore barred by statute of limitations in 1939 when present suit was started is without merit where plaintiff's predecessor in title is determined to have had superior title to that of the quitclaim grantee's grantee under his warranty deed (3 Comp. Laws 1897, § 8988; 3 Comp. Laws 1929, § 13964 et seq.).

6. Estoppel—Title to Land.

Title to land may not, under law of this State, rest on estoppel.

7. Frauds, Statute of—Title of Realty—Estoppel.

The statute of frauds prevents the passing of title to realty by parol, and this cannot be done any more under the guise of an estoppel, in the absence of fraud, and when the estoppel consists only of an implied assent, than by showing a direct parol contract (3 Comp. Laws 1929, § 13411).

8. Estoppel—Transfer of Title to Realty—Payment of Taxes— Assertion of Title—Possession—Abandonment.

In suit to have a deed to defendant declared void, the failure of plaintiff's immediate predecessor in title who is determined to have had a title superior to that of contemporary

holders of title in defendant's chain of title to pay taxes and payment of such taxes by defendant and her predecessors in title, and failure of plaintiff's immediate predecessor to assert his title or to take active possession of the land and his apparent abandonment of the land, do not operate to transfer title to the defendant.

9. SAME—TRANSFER OF TITLE TO REALTY.
   Title to land in this State cannot be transferred by laches or estoppel.

10. DEEDS—PAYMENT OF TAXES—LIENS—EQUITY.
    In suit to have deed to defendant declared void where plaintiff is entitled to decree declaring him to be owner of the land, defendant is entitled to lien thereon for amount of taxes she has paid thereon since such payments have inured to plaintiff's benefit and plaintiff, having sought and obtained relief in a court of equity, should do equity.

11. COSTS—FAILURE OF EITHER PARTY TO FULLY PREVAIL ON APPEAL.
    No costs are allowed on appeal in suit to set aside a deed where neither party has fully prevailed on appeal.

Appeal from Clare; Hart (Ray), J. Submitted April 13, 1943. (Docket No. 63, Calendar No. 42,274.) Decided June 7, 1943.

Bill by Richard I. Bonninghausen against Cecilie F. Hansen and another to quiet title to land. Bill dismissed. Plaintiff appeals. Reversed and remanded for determination of amount of taxes paid by defendant.

*Virgil W. McClintic,* for plaintiff.

*Maurice Black,* for defendant.

STARR, J. This case involves title to 80 acres of land in Clare county described as the west ½ of the northwest ¼ of section 10, town 20 north, range 3 west, which apparently had little value until the re-

cent discovery of oil and gas in that part of the State.

The facts are stipulated. On January 22, 1892, Edward Siskron and wife held title to the land in question. Both plaintiff and defendant base their claims of ownership on separate chains of title originating with said Siskron and wife.

Plaintiff's chain of title began with a conveyance from the Siskrons to Elias Padgett by warranty deed dated January 22, 1892, which was not recorded until about five months later on June 23, 1892. Padgett and wife conveyed to Abraham Buell by warranty deed dated May 9, 1892, which also was recorded June 23, 1892. Thereafter the chain of title was continued through successive conveyances until August 19, 1904, when Arthur Ridnour and wife conveyed to one F. J. Dishner by warranty deed which was recorded December 31, 1904. Dishner held such record title for about 35 years until June 2, 1939, when he conveyed by quitclaim deed to plaintiff Bonninghausen. It appears that during such period Dishner, a nonresident of the State, paid no taxes on the land and did not occupy or use it. Plaintiff obtained the above-mentioned quitclaim deed in the following manner: On May 1, 1939, he wrote Dishner at O'Neill, Nebraska, as follows:

"I am endeavoring to perfect title to some land in Clare county, Michigan, and I need some help from you.

"You may recall a transaction in 1904 wherein a piece of land was conveyed to you and later abandoned for taxes.

"What I need is a quitclaim from yourself and your wife, if you are married, and I could pay you $25 for same. If agreeable, kindly let me know and I will forward same for your signature."

Replying to the above letter on May 4, 1939, Dishner stated:

"Have your letter about some land in Clare county, Michigan, that I owned many years ago. Due to the length of time elapsed I have forgotten what was done with the title, and would ask that you furnish me additional information.

"Is that title in my name at this time? Please advise what the facts are regarding this title. If you have an abstract wish you would send it to me or to a local (bank) in this city for examination together with deed you wish signed. Make deed from F. J. and Martina G. Dishner, husband and wife. Have no objections to helping you in the matter, only want to know what it is all about before I do so that I will not injure some one who may be interested in the land at this time."

On May 8, 1939, plaintiff wrote Dishner in part as follows:

"Replying to your letter of May 4.    *    *    *
"In this case, you will note that in 1892, Edward Siskron conveyed the land to two different parties and there are two separate chains of title running from that time.    *    *    *

"My attorney looked this over and advised that the only (way) I could have a perfect title would be to have conveyances from everyone shown on the record, and that is why I wrote you because I will need whatever title you hold and also that of Hansen (defendant) and the Michigan Land & Title Company and Berrett.

"Am enclosing the deed together with check to pay for same and would ask that you and Mrs. Dishner execute it and return it at your convenience."

In pursuance of plaintiff's second letter, Dishner and wife executed and returned to him the quitclaim deed dated June 2, 1939.

Defendant's chain of title began with a conveyance from Siskron and wife to H. J. Dewey by quitclaim deed dated May 13, 1892, recorded May 23, 1892. Dewey and wife conveyed to R. W. Larkins by warranty deed dated May 30, 1892, which was recorded December 28, 1892. There were successive deeds purporting to convey title, and on December 22, 1925, Wilhelm Christiansen (defendant's brother) and Niels Peter Hansen (defendant's husband) received warranty deed which was recorded May 10, 1926. On October 1, 1926, Niels Peter Hansen and defendant, his wife, conveyed to Wilhelm Christiansen, and on April 9, 1931, said Christiansen conveyed by warranty deed to his sister, defendant Cecilie F. Hansen.

The record shows that since 1905 taxes on the land in the aggregate amount of about $330 were assessed to and paid by defendant and others in her chain of title. It also appears that defendant's husband and others in her chain paid expenses of $75 or more in connection with court proceedings to remove the cloud of certain undischarged mortgages from the title.

On August 31, 1939, subsequent to his receipt of the quitclaim deed from Dishner, plaintiff executed a 10-year oil and gas lease to the Pure Oil Company and has collected $100 or more as rental under such lease. On September 6, 1939, he began the present chancery action against defendant and Edwin R. Draper and his unknown heirs, legatees, and assigns, to quiet title to the land in question. The suit was later discontinued as to Draper.

In his bill of complaint plaintiff alleged, in substance, that under the conveyances hereinbefore mentioned, he held title to the land and that defendant had no interest therein. He asked that the deed to defendant be declared void and that he be

decreed to have title, free and clear of the claims of defendant and others. Defendant answered, asserting that under the conveyances hereinbefore mentioned she owned the land and that plaintiff had no interest therein. She also charged that plaintiff's immediate predecessor, Dishner, had abandoned his title to the land; that plaintiff had acquired his quitclaim deed from Dishner by fraud; that he was engaged in the business of searching title records for possible irregularities and of fostering litigation upon pretended irregularities and stale claims; that he did not come into court with clean hands; and that he was estopped from claiming title.

The case was submitted on the stipulation of facts and on briefs. The decree of the trial court entered September 1, 1942, states in part:

"The alleged chain of title under which plaintiff claims, commencing by a warranty deed from Edward Siskron and wife to Elias Padgett, dated January 22, 1892, and recorded June 23, 1892, had been cut off by the quitclaim deed from Edward Siskron and wife to defendant's predecessor in title H. J. Dewey, dated May 12, 1892, and recorded May 23, 1892, and further by the warranty deed from H. J. Dewey and wife to grantee in defendant's chain of title R. W. Larkins, dated May 30, 1892, and recorded December 28, 1892; and further, that it appearing to the court that the plaintiff purchased the interest of Dishner and wife for the express purpose of commencing this suit, and that the record and testimony shows that the plaintiff did not come into this court with clean hands, but purchased a stale claim for the express purpose of fostering litigation, and that the conduct on the part of the plaintiff is contrary to public policy, conscience, and equity, and further, that the plaintiff and his predecessors in the chain of title have been guilty of such laches and unexcusable delay as to preclude

the bringing of this suit, and  *  *  *  that the defendant, 'Cecilie . F. Hansen, and her immediate grantors have been bona fide purchasers under proper and sufficient deeds of conveyance, and have possessed, owned, controlled and managed, and have paid all the taxes prior to the date of filing of the bill of complaint herein on the lands mentioned in the bill of complaint.''

The decree also determined defendant to be the owner. of the land in question free and clear of all claims of plaintiff, and dismissed the bill of complaint. Plaintiff appeals from such decree. This being a chancery case, we consider it *de novo*.

As hereinbefore stated, both parties claim through deeds executed by Edward Siskron and wife. Plaintiff's chain of title began with the Siskrons' warranty deed to Padgett dated January 22, 1892. On May 9, 1892, Padgett and wife conveyed by warranty deed to Abraham Buell. Both the deed to Padgett and the deed from Padgett to Buell were recorded June 23, 1892.

Defendant's chain of title began with a quitclaim deed from Siskron and wife to H. J. Dewey dated May 12, 1892, and recorded May 23, 1892, a month prior to the recording of the two above-mentioned deeds in plaintiff's chain. On May 30, 1892, Dewey and wife conveyed to R. W. Larkins by deed with warranties against their own acts and the acts of other persons claiming by, through or under them, which deed was not recorded until December 28, 1892. The recording statute in force at the time of the above-mentioned conveyances (2 How. Ann. Stat. § 5683 [3 Comp. Laws 1897, § 8988]) provided as follows:

''Every conveyance of real estate within this State, hereafter made, which shall not be recorded as provided in this chapter, shall be void as against

any subsequent purchaser in good faith, and for a valuable consideration, of the same real estate or any portion thereof, whose conveyance shall be first duly recorded.''

Under such statute, if Dewey was a ''purchaser in good faith,'' the deeds in plaintiff's chain of title from the Siskrons to Padgett and from the Padgetts to Buell, both recorded June 23, 1892, would be void as against the subsequent deed in defendant's chain from the Siskrons to Dewey, recorded May 23, 1892. However, Dewey took by quitclaim deed, and under the above-quoted statute it was held that a purchaser by quitclaim deed was not a bona fide purchaser in good faith. *Donohue* v. *Vosper,* 189 Mich. 78; *Walker* v. *Schultz,* 175 Mich. 280; *Messenger* v. *Peter,* 129 Mich. 93; *Peters* v. *Cartier,* 80 Mich. 124 (20 Am. St. Rep. 508). In *Backus* v. *Cowley,* 162 Mich. 585, 592, we said:

''It is also well settled in this State that 'those who take by quitclaim deed are not bona fide purchasers, and take only the interest which their grantors had.' ''

The above-quoted recording statute was amended by Act No. 199, Pub. Acts 1915 (3 Comp. Laws 1929, § 13304 [Stat. Ann. § 26.547]), adding thereto the following provision:

''The fact that such first recorded conveyance is in the form or contains the terms of a deed of quitclaim and release shall not affect the question of good faith of such subsequent purchaser, or be of itself notice to him of any unrecorded conveyance of the same real estate or any part thereof.''

However, we held in *Donohue* v. *Vosper, supra,* that such 1915 amendment did not affect conveyances made prior thereto. Therefore, the two above-

mentioned warranty deeds in plaintiff's chain were not void as against the subsequent, but first-recorded, deed to Dewey, because Dewey, taking by quitclaim deed, was not a "subsequent purchaser in good faith."

Defendant next contends that prior to the recording of the two deeds in plaintiff's chain on June 23, 1892, Dewey and wife conveyed to Larkins by deed with warranties, dated May 30, 1892, and that Larkins in defendant's chain thereby became a "subsequent purchaser in good faith" and held title paramount to that received by Buell in plaintiff's chain. We cannot agree with such contention, because the deed to Buell in plaintiff's chain was recorded June 23, 1892, while the subsequent deed to Larkins in defendant's chain was not recorded until December 28, 1892. In other words, under the above-quoted recording statute, the subsequent deed to Larkins was not "first duly recorded."

Plaintiff's chain of title continued through successive purported conveyances until August 19, 1904, when F. J. Dishner received a warranty deed. Dishner held record title for about 35 years until June 2, 1939, when, under circumstances hereinbefore described, he conveyed by quitclaim deed to plaintiff. Defendant's alleged chain of title continued through successive conveyances until it reached defendant Cecilie Hansen April 9, 1931.

Defendant contends that plaintiff obtained his quitclaim deed from his immediate predecessor, Dishner, through fraud; that he purchased a stale claim to the title for the purpose of fomenting litigation and, therefore, does not come into equity with clean hands and is not entitled to the relief sought. She also contends that plaintiff is barred and estopped from asserting title to the land in question, because his immediate predecessor, Dishner, was

guilty of laches, lack of diligence, and had abandoned his right and title.

Dishner is not a party to this suit, and the question as to whether or not plaintiff obtained the quitclaim deed from him through fraud, is not before us. In any event, defendant could not create a superior title in herself through plaintiff's alleged fraud on Dishner.

Defendant next contends that the cause of action of plaintiff and his predecessors in title, if any, arose when the quitclaim deed from the Siskrons to Dewey was recorded May 23, 1892, and that such cause of action is barred by the statute of limitations (3 Comp. Laws 1929, § 13964 *et seq.* [Stat. Ann. § 27.593 *et seq.*]). In view of our conclusion that in 1892 grantee Buell in plaintiff's chain held title superior to that of grantee Larkins in defendant's chain, such argument as to the statute of limitations is without merit.

Neither party claims title by adverse possession. Defendant contends that plaintiff is estopped from asserting title in the present case because Dishner had failed to pay taxes; had been guilty of laches; and had abandoned his title. To hold with such contention would, in effect, result in the transfer of Dishner's title to defendant by estoppel. The law has long been established in this State that title to land cannot be transferred by laches or estoppel. In *McVannel* v. *Pure Oil Co.,* 262 Mich. 518, 526, 527, we said:

"The title to land may not, under the law of this State, rest on estoppel.

"'As our own cases settle this question, it is unnecessary to discuss at length cases from other States. There is a want of harmony upon the subject; but it is confidently believed that the doctrine contended for exists only where the courts have per-

mitted the doctrine of estoppel to override the statute of frauds.' *Nowlin Lumber Co.* v. *Wilson,* 119 Mich. 406.

" 'Unfortunately for defendant's contention, the statute of frauds * prevents the passing of title to realty by parol, and this cannot be done any more under the guise of an estoppel, in the absence of fraud, and when the estoppel consists only of an implied assent, than by showing a direct parol contract.' *Huyck* v. *Bailey,* 100 Mich. 223.

" 'It has been repeatedly held that interests in land cannot rest on estoppel alone. The statute of frauds forbids.' *Wilson* v. *Railroad Co.,* 132 Mich. 469."

See, also, *Kirchen* v. *Remenga,* 291 Mich. 94; *Angeloff* v. *Smith,* 254 Mich. 99.

Dishner received title under a warranty deed dated August 19, 1904. As hereinbefore determined, his title was superior to that claimed by the contemporary grantee in defendant's chain. His failure to pay taxes on the land, and the payment of such taxes by defendant and her predecessors, did not operate to transfer the title from Dishner to defendant. Furthermore, neither Dishner's failure to assert his title or to take active possession of the land nor his apparent abandonment of the land would operate to transfer his title to defendant.

While recognizing the equity of defendant's position, nevertheless, we must adhere to the rule that title to land in this State cannot be transferred by laches or estoppel. Defendant could not create title in herself through the alleged laches and lack of diligence on the part of plaintiff and his predecessor, Dishner.

Defendant contends that plaintiff does not come into court with clean hands and is not entitled to the equitable relief sought, because he obtained the quit-

---

* See 3 Comp. Laws 1929, § 13411 (Stat. Ann. § 26.906).—REPORTER.

claim deed from Dishner through fraud. Plaintiff's alleged fraud, if any, was upon Dishner and not upon defendant, and she cannot bolster her claim of title by such fraud.

We are not in sympathy with plaintiff's apparent business practice of seeking out defects and irregularities in record titles and attempting, through litigation or otherwise, to profit thereby. However, under all the facts and circumstances of the present case as shown by the record, we are convinced that plaintiff, standing in the shoes of his grantor, Dishner, holds superior title to the land in question.

The factual situations presented in the cases of *Fetters* v. *Wittmer Oil & Gas Properties,* 258 Mich. 310; *Olson* v. *Williams,* 185 Mich. 294; *Otis* v. *Kennedy,* 107 Mich. 312; and other Michigan authorities cited by defendant, distinguish them from the case at hand and do not sustain her contentions.

Plaintiff has sought and obtained relief in a court of equity, and, therefore, he should do equity. Since her purchase in 1931, defendant has paid the taxes on the land. Such payments have inured to the benefit of plaintiff, and he should reimburse and repay defendant.

The decree of the trial court is set aside. A decree may be entered in this court determining plaintiff to be the owner of the land in question, subject, however, to a lien in favor of defendant for the amount of taxes she has paid. Such decree shall also provide for remanding the case to the trial court for the determination of the amount of taxes paid by defendant to the date of the decree, for which amount she shall have a lien as above provided.

As neither party has fully prevailed on this appeal, no costs will be allowed.

BOYLES, C. J., and CHANDLER, NORTH, WIEST, BUTZEL, BUSHNELL, and SHARPE, JJ., concurred.