## HOLDEN v. BUTLER.

1. LIENS—ACCOUNTING—HOMESTEADS—CONVEYANCE.

Under a written contract made in consideration of complainant's releasing her dower and homestead rights in a farm to her son, whereby the son agreed to transfer to complainant one-third of all products of the farm during her lifetime and to permit her to procure fire wood therefrom and to occupy a part of the home, equity has jurisdiction to require an accounting, as to a subsequent grantee of the premises chargeable with notice, and to declare a lien on the premises, though no lien was, in terms, provided for by the instrument.

2. SAME—VENDOR AND PURCHASER—LIENS.

Complainant's possession and occupancy of a part of the homestead was notice to the son's wife of any claim that the mother may have had under the contract, so that after becoming divorced from the son and obtaining title to the

premises, under the decree, the son's wife could not claim the rights of a bona fide purchaser; furthermore, the conveyance by virtue of such decree, being without consideration, defendant took subject to outstanding claims and equities.

3. SAME—ESTOPPEL.
   Defendant did not acquire a superior right by paying off an outstanding incumbrance on the property.

Appeal from Eaton; Smith, J. Submitted June 15, 1911. (Docket No. 63.) Decided December 17, 1912.

Bill by Mary E. Holden against Eva B. Butler for an accounting, injunction, and general relief. From a decree for defendant, complainant appeals. Reversed.

*George Huggett*, for complainant.

*Frank A. Dean*, for defendant.

BIRD, J. In the year 1873, complainant's husband died intestate, leaving three sons, Daniel, James, and George, him surviving. The homestead, consisting of 40 acres of land in Eaton county, and a small amount of personal property, constituted his estate. Complainant and the boys continued to live on the homestead and manage the farm until some time in 1882, when Daniel, the oldest boy, married the defendant, and thereafter he undertook to manage the farm alone. About this time the dwelling was divided into two apartments; complainant and her sons James and George living in one, and Daniel and his wife in the other. In the year 1885, Daniel made an agreement with his brother James to buy his interest in the estate for the sum of $250. In order to do this, he had to mortgage the premises. The prospective mortgagee would not accept the mortgage subject to complainant's right of dower. Daniel therefore made an arrangement with complainant, his mother, whereby she quitclaimed to him her interest in the estate, and in consideration thereof received from him the following written agreement, which was neither witnessed nor recorded until the year 1908:

"This agreement made this 7th day of December, A. D. 1885, by and between Daniel O. Holden, of Bellevue, Michigan, of the first part, and Mary E. Holden, of the same place, of the second part, witnesseth: That the party of the first part for and in consideration that the said party of the second part has sold and conveyed to said party of the first part by quitclaim deed all her dower and homestead interest in and to the lands of which her late husband, James Holden, died seised, hereby agrees to let the said party of the second part have and occupy that portion of the house which she now occupies, upon said homestead land, for and during her natural life, and also that he will during each year during the lifetime of the said party of the second part, give and deliver to the said party of the second part one-third part of all crops and produce raised by him on said homestead land of forty acres so conveyed to said party of the first part as aforesaid; and also to let the said party of the second part get her firewood sufficient for her use from said homestead land as long as there is any timber remaining thereon.

"In witness whereof the party of the first part has hereunto set his hand the day and year above written.
                              "Daniel O. Holden."

When this agreement was given, Daniel agreed with his mother that he would buy the interest of George as soon as he became of age. In 1893, instead of purchasing the interest of George, George purchased his interest, and Daniel and his family left the place for something like two years, after which they returned and Daniel repurchased the entire premises from George. Matters went along in this way, complainant living in her apartment and defendant and her husband, Daniel, living in the other, until some time in 1896, when complainant went to remain for a time with her brother on account of sickness in his family. Subsequently the brother died and she remained with her nephew and niece until 1908, during which time her household goods had remained in her apartment and she had kept the possession thereof but had not demanded one-third of the crops reserved to her in the agreement.

During the years that complainant was away, trouble

had come to Daniel and the defendant and had separated them. Before leaving defendant, Daniel conveyed the premises to her by quitclaim deed. Subsequently, for the purpose of promoting a reconciliation between them, defendant caused the premises to be conveyed to herself and Daniel as an entirety. The peace pact was soon broken by dissension, and Daniel again left defendant. She then sought a decree of divorce, which was granted, and with it the title to the entire premises. A few days after the divorce was granted, she changed her name by marriage to Butler. After the divorce was granted, defendant, aided by her son, paid the balance due upon the mortgage, amounting to $585, the major portion of which came from the avails of the farm. In August, 1908, complainant had reached the age of 72 years, and, feeling that she could no longer work as she had done, she demanded of the defendant that from then on she must have the income which was reserved to her by the agreement. The defendant professed not to have any knowledge that any such agreement was ever made, and refused to comply with complainant's demand, whereupon this bill was filed to enforce her rights under the agreement. After a hearing in the cause was had, the trial court denied her the relief prayed, and held that:

"Upon a consideration of the entire case as it appears to me from the proof, I am of the opinion that complainant has no legal rights in the land in question and that it would be inequitable and unjust to burden the land with such a lien as complainant claims. The contract under which she asserts her claims is a personal one as against her son Daniel O., and cannot be enforced against the land, or against the defendant. There is no proof showing knowledge on the part of the defendant of the existence of the contract under which complainant claims and I am satisfied she had no knowledge of it. It is very probable that, had she known it, she would not have paid the Allen mortgage and had it discharged. It seems to me it would be inequitable, after the long silence of the complainant as to her claims and rights, permitting the payment and discharge of the mortgage, in ignorance of

her claim, to further burden the land with the claimed accumulated yearly lien upon the land for all these years, and with the further burden of an annual incumbrance on the same equal to one-third of all crops and proceeds raised on the same. I not only feel that this would be inequitable and unjust, but further than that, I do not think she has a legal claim under her contract with her son as against this land, or the defendant."

While the agreement which Daniel gave to his mother was a personal one and did not in terms provide for a lien, it was one in which a court of equity might have very properly ordered an accounting and made the amount found due thereon a lien on the premises while they were owned by Daniel or any subsequent purchaser who had notice of the agreement. *Baker* v. *Baker*, 157 Mich. 76 (121 N. W. 287).

Complainant does not ask for an accounting for the time that she was away, but only from the time of her demand in August, 1908. We think she is entitled to this relief. Complainant surrendered her interest in the estate to enable Daniel to raise money to purchase the interest of his brother George, and we think the mortgage and agreement were executed under such circumstances that defendant could not have been ignorant of the agreement. Such readjustments of property rights in families are usually preceded by much discussion, and the testimony of James would indicate that this case was no exception. He testified that the agreement was discussed by members of the family in defendant's presence. Defendant claims that she thought the $50 paid to complainant for her share in the personal property was in payment of her interest in the estate. If she was sincere in this claim, she must have been very curious afterward to know by what right complainant continued to occupy and keep possession of her apartment in the dwelling. Complainant never surrendered the possession of her apartment in the dwelling. This was notice to defendant that complainant had some rights there, and it was then her duty to learn what they were.

But aside from this question, defendant was not a bona fide purchaser. The conveyance was a voluntary one. And as she paid nothing for it, she would take the premises subject to the outstanding equities against it. *Peters* v. *Cartier*, 80 Mich. 124 (45 N. W. 73, 20 Am. St. Rep. 508); *Otis* v. *Kennedy*, 107 Mich. 312 (65 N. W. 219); *Hoffman* v. *Simpson*, 121 Mich. 501 (80 N. W. 1133); *Zeigler* v. *Coal Co.*, 150 Mich. 82 (113 N. W. 775, 13 Am. & Eng. Ann. Cas. 90).

We conclude that defendant has no equities which ought to be preferred to those of complainant. Complainant is entitled to have her rights under the agreement enforced. If the parties are unable to agree as to the value of one-third the crops raised since complainant's demand in 1908, an accounting thereof will be taken under the direction of the trial court, and, when determined by the court or by an agreement, the amount will be made a lien on the premises until paid.

The decree of the lower court will be reversed, with costs to complainant of both courts.

McALVAY, BROOKE, STONE, and OSTRANDER, JJ., concurred.